We have held today in *United States v. Winner, supra,* that mandamus is available to review orders compelling the production of documents or testimony claimed to be privileged in certain extraordinary situations. The power to issue extraordinary writs exists, and will be exercised by this Court in its discretion, only where exceptional circumstances demand its use. *Kerr v. United States District Court,* 426 U.S. 394, 402–403, 96 S.Ct. 2119, 2123–2124, 48 L.Ed.2d 725 (1976). "A judicial readiness to issue the writ of mandamus in anything less than an extraordinary situation would run the real risk of defeating the very policies sought to be furthered by . . . Congress." *Id.* at p. 403, 96 S.Ct. at p. 2124. Even though hardship may result, extraordinary writs are not substitutes for appeal. *Bankers Life and Casualty Co. v. Holland,* 346 U.S. 379, 74 S.Ct. 145, 98 L.Ed. 106 (1953).

UNITED STATES of America, Petitioner,

v.

Honorable Fred M. WINNER, United States Chief District Judge for the District of Colorado, Respondent.

James Feeney and Vincent Carrano, Real Parties in Interest.

John C. White, Intervenor.

No. 80–2154.

United States Court of Appeals, Tenth Circuit.

Argued Dec. 15, 1980.

Decided Jan. 21, 1981.

---

See also D.C., 501 F.Supp. 1324; D.C., 501 F.Supp. 1337; 10th Cir., 641 F.2d 821.

Joseph F. Dolan, U. S. Atty., Denver, Colo. (Irvin B. Nathan, Deputy Asst. Atty. Gen., Washington, D. C., and Susan R. Roberts, Asst. U. S. Atty., Denver, Colo., with him, on briefs), for petitioner.

Daniel J. Sears, Denver, Colo., for James Feeney.

Arthur H. Bosworth II, Denver, Colo., for Vincent Carrano.

Stuart F. Pierson (James F. Hibey, Washington, D. C., with him on brief), of Verner, Liipfert, Bernhard & McPherson, Washington, D. C. (Coghill & Goodspeed, Denver, Colo., of counsel), for John C. White.

Before BARRETT, DOYLE and McKAY, Circuit Judges.

BARRETT, Circuit Judge.

This is an original proceeding in the nature of mandamus. Petitioner, United States of America, seeks an order compelling Respondent District Court to vacate orders commanding the presence of Deputy Attorney General Charles B. Renfrew and Assistant Attorney General Philip B. Heymann at post-conviction proceedings in a pending criminal case.

Real Party in Interest James Feeney was convicted by a jury of defrauding federally insured financial institutions through the use of false banking instruments.[1] These instruments originated from several British West Indies banks established to facilitate the fraud.

Prior to trial, Feeney sought disclosure of a series of tape-recorded conversations in which he participated while acting as a confidential informant to the United States Attorney for the Southern District of New York. Feeney's informant activities centered around an alleged plot orchestrated by financier Robert L. Vesco, and others, designed to ensure the release of military and commercial aircraft to Libya through bribes of senior officials in the executive branch and the Democratic National Committee.

Feeney also moved to dismiss the indictment on the grounds that the Southern District's prosecutors had promised him immunity from prosecution, or in the alternative, that the Southern District's personnel condoned and encouraged his illegal activities.[2]

Judge Sherman G. Finesilver, who handled the matter during the pre-trial phases of the proceedings, held an *in camera* evidentiary hearing on the motions during which extensive testimony was presented. Approximately sixty hours of tapes and several hundred pages of documents concerning Feeney's involvement in the Vesco matter were submitted to the Court *in camera*. Based on this comprehensive review, Judge Finesilver denied the request for disclosure on relevancy grounds; concluded Feeney had not been promised immunity; and held that personnel in the Southern District's office neither knew of or condoned Feeney's fraudulent activities in Colorado.[3]

At trial, Feeney contended he lacked criminal intent in that his actions were simply governmentally sponsored informant activities taken in connection with the Southern District's investigation of Robert Vesco and others. On the basis of Judge Finesil-

---

1. The indictment involved in the instant case was handed down in the United States District Court for the District of Colorado. Real Party in Interest Vincent Carrano was convicted along with Feeney. Carrano has joined Feeney's arguments in this case.

2. He also alleged other constitutional violations.

3. One tape was found relevant. Its disclosure was not ordered at that time. There was, nevertheless, a finding of no constitutional abridgment of rights in connection with that particular electronic surveillance.

ver's *in camera* pre-trial order, Chief Judge Fred M. Winner, the presiding judge at trial,[4] denied disclosure of the requested materials and restricted Feeney's cross-examination of government witnesses designed to elicit his informant efforts and their connection with this case. Frustrated in his attempts, Feeney rested without presenting a defense. He was convicted of submitting materially false statements to federally insured financial institutions for the purpose of influencing credit decisions in violation of 18 U.S.C. §§ 1014 and 2; wire fraud in violation of 18 U.S.C. §§ 1343 and 2; interstate transportation of fraudulent securities in violation of 18 U.S.C. §§ 2314 and 12; and conspiring to commit acts proscribed by 18 U.S.C. §§ 1014 and 2314, in violation of 18 U.S.C. §§ 371.

On July 28, 1980, Feeney filed a post-trial motion for production seeking documentary information concerning conversations he participated in during the course of his informant activities. As authority, Feeney relied on Rule 16, Fed.Rules Crim.Proc., 18 U.S.C., and *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Feeney argued that access to the documents, earlier denied by Judge Finesilver, was essential to post-conviction arguments for new trial or in mitigation of sentence.

The Court held that the Government's interest in preventing disclosure failed to outweigh Feeney's constitutional right to exculpatory evidence in mitigation of punishment. Chief Judge Winner granted access to the tapes: "*Brady v. Maryland* says that all material 'favorable to an accused ... when the evidence is material either to guilt *or to punishment, irrespective of the good faith or bad faith of the prosecution'* must be supplied to defendant and his counsel. Thus, worthy prosecutorial motive in secreting tapes and notes doesn't have anything to do with a defendant's rights to disclosure of something which may lessen his sentence..."[5]

A subsequent motion to schedule an evidentiary hearing concerning the Government's compliance with the disclosure order was also granted. Feeney claimed certain tapes were not produced, certain telephone records were incomplete, and that at least one tape had been altered.

In contemplation of the October 1, 1980 hearing, Assistant Attorney General Philip B. Heymann was subpoenaed to appear and bring any documents "pertaining to communications by you with any employee of the Department of Justice concerning the existence or delivery of tape recorded conversations or notes of conversations to which James Feeney was a party as an informant for the government and any recordations in any form concerning communications to which you are a party pertaining to the undercover activities of James Feeney in cooperation with the U. S. Attorney's Office for the S. D. of New York...."[6] *United States v. Krown, supra* (subpoena duces tecum, September 25, 1980).

The Government responded to the subpoena by filing a motion to quash its enforcement. No ruling on the motion was made before the scheduled hearing date. Heymann failed to appear. Instead the Government called Assistant United States Attorney Raymond Levites and Investigator Thomas Doonan, of the Southern Dis-

---

4. Feeney objected to the assignment of Chief Judge Winner as the presiding judge at trial "on the grounds that since Judge Winner had not had the opportunity to review the tape recordings and notes of Feeney's undercover efforts, he could not rule during the course of the trial whether such materials became relevant to the presentation of Feeney's defense."

5. *United States v. Krown*, No. 80–CR–54 (D.Colo., filed February 22, 1980) (order granting access to documents, September 5, 1980).
   In a later opinion Judge Winner wrote: "Another judge ruled that certain evidence was not relevant to guilt, but I deem the evidence to be quite relevant to sentencing, and, if some of the conversations on tape are uncoded, it may be that although their relevance would not appear before deciphering, the conversations may indeed be relevant to guilt, but that remains to be decided." [*United States v. Krown, supra*, (opinion of October 7, 1980)].

6. Feeney's counsel also filed the required affidavit setting forth the nature of the testimony desired. *See* 28 C.F.R. § 16.23(c) (1980). The affidavit is reproduced as Appendix A.

trict of New York—both of whom dealt with Feeney during his covert activities.

Prior to the hearing, each witness received a letter from Deputy Attorney General Charles B. Renfrew concerning their forthcoming testimony. Renfrew wrote:

> In connection with your appearance as a witness in the post conviction proceedings involving James Feeney in the District of Colorado you are authorized to answer questions concerning Mr. Feeney's cooperation with the Government, the completeness of the Feeney tapes previously furnished to the court, the Department's awareness of his other activities and directly related matters. In the event the questioning goes beyond these areas and you are asked about ongoing investigations you should respectfully decline to answer and advise the Court you must seek further instructions from the Department of Justice pursuant to 28 C.F.R. 16.21, et seq. See *United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417.
>
> [Letter of Charles B. Renfrew, September 30, 1980].

These witnesses refused to answer questions bearing on the course of the Government's grand jury investigation in New York.

In an opinion issued October 7, 1980, Chief Judge Winner criticized the failure of governmental witnesses to answer questions about the grand jury investigation, the Government's attempts to "block disclosure of previously ordered documents and tapes", and the Government's generally unfair treatment of Feeney.[7]

Later, on October 20, 1978, Chief Judge Winner issued an opinion in which he wrote:

The witnesses Heymann, Levites and Doonan must appear, and any refusal to answer must be based on personal, individualized instructions given them by the Deputy Attorney General during the questioning. I do not think that the power to refuse to answer questions can be delegated to subordinates under instructions as flexible as those appearing in the Deputy Attorney General's letters to the witnesses. Under 28 C.F.R. § 16.21 et seq, and under *United States ex rel. Touhy v. Ragen, supra*, it is only the officer who issues the instruction who can decide on the secrecy.

\* \* \* \* \* \*

At the hearing I am about to set, testimony will commence in open court, but upon personal demand of the Deputy Attorney General, testimony he insists be denied public airing will be taken in camera preliminarily.... Following the in camera hearing [if a secret hearing is demanded by the Deputy Attorney General after his personal consideration of the necessity for holding part of a criminal trial in private] a decision will be made as to how much, if any, of the confidential testimony will be ordered repeated in public.[8] *United States v. Krown, supra* (memorandum opinion October 20, 1980).

The Government moved for reconsideration and requested a stay pending judicial review. The motion was denied October 27, 1980 in all respects:

> I realize that if these people were ordered to appear in countless cases it would frustrate the operation of the Department of Justice, but they won't be ordered to appear frequently because they won't issue and fall back on secrecy orders very often. The only reason the Deputy Attorney General is ordered to

---

**7.** Chief Judge Winner reiterated his earlier view that the Government must decide between disclosure with the danger that the pending grand jury proceeding will be compromised or, if the danger is too grave, a grant of immunity to Feeney.

**8.** In his October 7, 1980, order Chief Judge Winner opined that "[s]urely the post trial mo-

tions with which we are here troubled come under *Richmond Newspapers* [*v. Commonwealth of Virginia*, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980)] rather than under the very limited pre-trial motions discussed in *Gannett Co., Inc. v. DePasquale* (1979) 443 U.S. 368 [99 S.Ct. 2898, 61 L.Ed.2d 608]."

appear is that he is trying to prevent testimony before this court which I believe is relevant and important. The Assistant Attorney General in charge of the Criminal Division has been subpoenaed because defense counsel says he has personal knowledge of important aspects of this case. Whether he does or whether he does not have that knowledge we will find out if he appears....[9]

*United States v. Krown, supra* (memorandum opinion October 27, 1980).

A petition for writ of mandamus seeking an order compelling Chief Judge Winner to "vacate orders requiring the attendance of Deputy Attorney General Charles B. Renfrew and Assistant Attorney General Philip B. Heymann at a post-conviction hearing by the District Court ..." was filed in this Court on October 28, 1980. We issued a temporary stay of the District Court's order and expedited consideration of the issues presented.

### Jurisdiction

■ At the outset, we must determine whether the District Court's orders commanding the presence of the Deputy Attorney General and the Assistant Attorney General at the post-conviction hearings are reviewable.

The contested orders are not appealable. *United States v. Ryan*, 402 U.S. 530, 91 S.Ct. 1580, 29 L.Ed.2d 85 (1971); *In re Attorney General of the United States*, 596 F.2d 58 (2d Cir. 1979). As an alternative, the Government and White contend that review is available under the All Writs Act, 28 U.S.C. § 1651(a).

In unique situations, the discretionary remedy of mandamus has been invoked to "review orders compelling the production of documents or testimony claimed to be privileged or covered by other more general interests in secrecy." *Iowa Beef Processors, Inc. v. Bagley*, 601 F.2d 949, 953–954 (8th Cir. 1979), *cert. denied*, 441 U.S. 907, 99 S.Ct. 1997, 60 L.Ed.2d 376 (1979); *Usery v. Ritter*, 547 F.2d 528 (10th Cir. 1977). The

"rationale for invoking mandamus in such situations is two-fold: (1) disclosure of the allegedly privileged or confidential information renders impossible any meaningful appellate review of the claim of privilege or confidentiality; and (2) the disclosure involves questions of substantial importance to the administration of justice." *Iowa Beef Processors, Inc. v. Bagley, supra* at p. 955, n. 7.

The interests invoked here potentially touch various constitutional rights, as well as other important concerns such as the values underlying the secrecy of grand jury proceedings. From what we have observed, this is an "extraordinary case" in which "[g]reat issues are at stake for all parties concerned." *United States v. United States District Court*, 444 F.2d 651, 655 (6th Cir. 1971), *aff'd*, 407 U.S. 297, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972). If that were not enough, the subpoenaed parties are high level public officials of a coequal branch of government exercising power entrusted to them by both the legislative and executive departments. Although their positions are not such as to bring them within the rule announced in *United States v. Nixon*, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974), "[W]e cannot ignore the fact that a contempt sanction imposed on [the Deputy General and the Assistant Attorney General] in [their] official capacit[ies] has greater public importance, with separation of powers overtones, and warrants more sensitive judicial scrutiny than such a sanction imposed on an ordinary litigant." *In re Attorney General of the United States, supra* at p. 64. In light of the interests involved, the issues presented, the policy considerations, and the levels of government implicated, we hold that the orders contested here present "exceptional circumstances" justifying the invocation of our jurisdiction under the All Writs Act, *supra*.

### Standard of Review

"Mandamus is an extraordinary writ, and the requirements for its issuance are strict."

---

**9.** The Court assured the Government that if "after an in camera hearing I order the testimo-

ny taken in open court, a reasonable stay will be granted to seek appellate review...."

*State Farm Mut. Auto. Ins. v. Scholes,* 601 F.2d 1151, 1154 (10th Cir. 1979). While "a simple showing of error may suffice to obtain a reversal on direct appeal, to issue a writ of mandamus under such circumstances 'would undermine the settled limitations upon the power of an appellate court to review interlocutory orders.'" *Allied Chemical Corp. v. Daiflon, Inc.,* —— U.S. ——, 101 S.Ct. 188, 66 L.Ed.2d 193 (1980) (per curiam), *quoting, Will v. United States,* 389 U.S. 90, 98 n. 6, 88 S.Ct. 269, 275 n. 6, 19 L.Ed.2d 305 (1967).

■ The "traditional use of the writ in aid of appellate jurisdiction . . . has been to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Roche v. Evaporated Milk Association,* 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943). We have traditionally exercised extreme caution in granting writs of mandamus—the petitioning party bearing "the burden of showing that its right to issuance of the writ is 'clear and undisputable.'" *Bankers Life and Casualty Company v. Holland,* 346 U.S. 379, 384, 74 S.Ct. 145, 148, 98 L.Ed. 106 (1953), *quoting United States v. Duell,* 172 U.S. 576, 582, 19 S.Ct. 286, 43 L.Ed. 559 (1899). As the Court recently emphasized in *Allied Chemical Corp., supra,* "[o]nly exceptional circumstances, amounting to a judicial usurpation of power, will justify the invocation of this extraordinary remedy." *See Will v. Calvert Fire Insurance Company,* 437 U.S. 655, 98 S.Ct. 2552, 57 L.Ed.2d 504 (1978).

With these standards in mind, we turn to the merits of the case.

### *The Deputy Attorney General*

The District Court ordered Deputy Attorney General Renfrew to appear personally and invoke the Government's privilege not to reveal the scope and course of ongoing grand jury proceedings in response to specific questioning. *See* 28 C.F.R. § 16.21 *et seq.* (1979). Contending that his appear-

---

**10.** We have considered the arguments of Intervenor John C. White in connection with these issues.

ance is not necessary, the Government seeks redress in this Court.[10]

In addition to those privileges available to all litigants, the Deputy Attorney General may claim any of the privileges exclusively reserved for the Government. *Association for Women in Science v. Califano,* 566 F.2d 339, 343 (D.C.Cir.1977) (summarizing available governmental privileges). Although not specifically claimed, the law enforcement evidentiary privilege applies most closely to the interests sought to be protected here. *See Black v. Sheraton Corporation,* 564 F.2d 531 (D.C.Cir.1977). Of secondary concern is the consultative privilege. *See McClelland v. Andrus,* 606 F.2d 1278 (D.C.Cir.1979); *Carl Zeiss, Stiftung v. V.E.B. Carl Zeiss, Jena,* 40 F.R.D. 318 (D.D.C.1966), *aff'd memo. sub nom. V.E.B. Carl Zeiss, Jena v. Clark,* 384 F.2d 979, *cert. denied,* 389 U.S. 952, 88 S.Ct. 334, 19 L.Ed.2d 361 (1967) (deliberations within the Justice Department).

■ The law enforcement investigative privilege is "based primarily on the harm to law enforcement efforts which might arise from public disclosure of . . . investigatory files." *Black v. Sheraton Corporation, supra,* at p. 541, and bars disclosure of facts. The consultative privilege, on the other hand, shields information "reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena, supra,* at p. 324. Thus, successful invocation of both privileges would probably thwart all disclosure.

■ To assert the law enforcement evidentiary privilege, the responsible official in the department must lodge a formal claim of privilege, after actual personal consideration, specifying with particularity the information for which protection is sought, and explain why the information falls within the scope of the privilege. *Assoc. for Women in Science v. Califano, supra; Black v.*

*Sheraton Corp., supra.* The same requirements, which must be strictly adhered to, are essential to a claim of the consultative privilege.

█ We agree with the District Court that these requirements have not been met. Unlike *Reynolds*, however, the Government has offered, but not without extreme reluctance, to provide much of the information *in camera* :

> [W]e propose that the appropriate course in this case is for the Court to hear *in camera* the answers to questions which government witnesses have thus far declined to answer in public hearings on the basis of investigative privilege, as well as the answers to any follow-up questions in those areas. We propose that this *in camera* testimony be given by Messrs. Levites and Doonan, the government representatives who have previously invoked the privilege and are most knowledgeable about the matters into which the Court intends to inquire.
>
> \*     \*     \*     \*     \*     \*
>
> [I]f after hearing all the testimony of Messrs. Levites and Doonan *in camera*, the Court continues to believe that Mr. Heymann is a necessary witness, the government will permit defendant's counsel to take Mr. Heymann's oral deposition in Washington, D.C. Of course, the deposition would be recorded and under oath. If Mr. Heymann is requested to testify to matters that are subject to the investigative privilege, he will give such testimony on the same terms and conditions as Messrs. Levites and Doonan, including the condition of an adequate protective order. The transcript of such testimony will be filed with the Court under seal for review of Mr. Heymann's claims of privilege.
>
> \*     \*     \*     \*     \*     \*
>
> This proposal clearly obviates the need for my [the Deputy Attorney General] presence at the *in camera* proceeding. I have given this entire matter "actual consideration," *United States v. Reynolds*, 345 U.S. 1, 8, 73 S.Ct. 528, 532, 97 L.Ed.

727 (1953), based on my communications with subordinates regarding the nature and scope of the grand jury investigation in New York. If there are further difficulties in the application of my instructions to particular questions, I am prepared to review the transcripts and advise all parties promptly in writing of the position of the Department and the reasons for it.

\*     \*     \*     \*     \*     \*

> At the conclusion of this *in camera* proceeding, the Court will make the initial determination of whether the defendant's need for the information, if any, is so compelling as to outweigh the government's claim of privilege and whether there is an overriding justification for public disclosure of the privileged information.
>
> We will not object to the presence of defendant Feeney and his counsel at such *in camera* hearings for purposes of cross-examining the government witnesses or rendering any other assistance that the Court may request. However, we will agree to the presence of the defendant and his counsel only if they are ordered, in advance, that they are not to communicate to any other person information which is disclosed at the hearing, and as to which the investigative privilege is claimed. We do object to the presence of any other party to this proceeding, including Janes [sic] C. White. If the Court decides against the government with respect to any claim of privilege, it is anticipated that the Court would stay such decision pending appellate review, as the Court stated in its order of October 27. It is further anticipated on the basis of the October 27 order that the Court will take whatever procedural steps are necessary to assure that the government may obtain appellate review of the merits of the Court's decision.

[Letter from Charles B. Renfrew to Honorable Fred M. Winner (November 21, 1980)].

█ With some modifications, we conclude that this proposal presents a workable

solution to a difficult problem.[11] The Deputy Attorney General must personally review any questions as to which a claim of privilege is interposed and provide both the Court and counsel with his specific instructions and the reasons for such instructions, under *Reynolds*, in writing. The Court may then rule on the validity of the claims. The ruling should provide us with specific reasons for each of the Court's decisions.

Although serious questions arise concerning the Government's request that Feeney and his counsel "not . . . communicate with any other person information which is disclosed at the hearing, and as to which the investigative privilege is claimed", we believe that given the nature of the testimony anticipated here, such is permissible at least until a dispositive ruling on its public dissemination is made.[12] *Branzburg v. Hayes*, 408 U.S. 665, 684, 92 S.Ct. 2646, 2658, 33 L.Ed.2d 626 (1972).

Under these limitations, we hold that the Deputy Attorney General's presence in the District Court is not required. *See Black v. Sheraton Corp., supra.*

### The Assistant Attorney General

In the Government's view, the subpoena duces tecum served on the Assistant Attorney General must be quashed in that (1) the testimony and documents are irrelevant to the instant case; (2) its compliance would be unreasonable or oppressive; (3) its enforcement would undermine the interests served by maintaining the confidentiality of the grand jury proceedings; and (4) alternative means exist to accommodate Feeney's interest which should be employed.

■ Rule 17(c) of the Federal Rules of Criminal Procedure, 18 U.S.C., provides that a subpoena duces tecum may be quashed if "compliance would be unreasonable or oppressive." Although Rule 17 subpoenas are generally employed in advance of trial, we see no reason why their use should not be available for post-trial motions and sentenc-ing. In such situations, the party seeking production must show: (1) that the information is evidentiary and relevant; (2) that it is not otherwise procurable in advance through the exercise of due diligence; (3) that the party seeking production cannot properly prepare for post-trial motions or sentencing without advance inspection; and (4) that the application is made in good faith and is not simply intended as a general "fishing expedition". *See United States v. Nixon, supra*, 418 U.S. at pp. 699–700, 94 S.Ct. at pp. 3103–3104. The Government's objections center on the first and fourth elements.

Respondent District Court has consistently stressed that the constitutional right to disclosure of exculpatory material under *Brady v. Maryland, supra*, is two-pronged—mandatory disclosure of information which bears on guilt or punishment. We agree. *Brady* holds that all material "favorable to an accused . . . where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution" must be disclosed to both the accused and his counsel. *Id.* 373 U.S. at p. 87, 83 S.Ct. at pp. 1196–1197. "A prosecution that withholds evidence on demand of an accused which, if made available, *would tend to exculpate him or reduce the penalty* helps shape a trial that bears heavily on the defendant." *Id.* at pp. 87–88, 83 S.Ct. at p. 1197 [emphasis supplied].

■ The key element in applying *Brady* and its progeny is often the "materiality" of the evidence sought to be suppressed. This is so because "*Brady* is not a discovery rule, but a rule of fairness and minimum prosecutorial obligation." *Talamante v. Romero*, 620 F.2d 784, 787 (10th Cir. 1980), *cert. denied*, —— U.S. ——, 101 S.Ct. 223, 66 L.Ed.2d 99 (1980), *quoting, United States v. Beasley*, 576 F.2d 626, 630 (5th Cir. 1978), *cert. denied*, 440 U.S. 947, 99 S.Ct. 1426, 59 L.Ed.2d 636 (1979). Where there has been a specific demand for information, due process requires disclosure if *the information*

---

**11.** Our disposition as to the Assistant Attorney General's claim follows in the next section.

**12.** We do not decide whether the Court may order the parties not to disclose the information, if public dissemination is not allowed.

might affect either the outcome of trial or imposition of punishment. *United States v. Agurs,* 427 U.S. 97, 104, 96 S.Ct. 2392, 2397–2398, 49 L.Ed.2d 342 (1976); *Talamante v. Romero, supra,* at p. 788.

■ At this point in the proceedings, we do not believe that there exists a sufficient likelihood that the subpoenaed material, and the testimony of the Assistant Attorney General is of sufficient relevancy as to require production. This determination, however, does not foreclose the need for his appearance at a later date. If after hearing the testimony of Messrs. Levites and Doonan *in camera* the District Court rules that Mr. Heymann's presence is necessary to provide relevant information, his appearance before the Court in Denver, Colorado, may be ordered. Such an order, of course, must be supported by detailed written findings.

The Government suggests that less burdensome and disruptive means exist for ferreting out the requested information, such as affidavits, written answers to interrogatories, oral depositions in Washington, D.C.,

or, if necessary, the drawing of issue-related inferences based on the failure to disclose. Given the critical decisions of whether further inquiry into sensitive areas is necessary, we hold that Mr. Heymann's presence may be required if found necessary.[13] His credibility and his availability for additional personal in-court inquiries may be of paramount importance. Immediate court control is essential given the sensitive nature of the subject matter.

### Conclusion

Inasmuch as the Government's proposals were submitted to our Court following the filing of this Petition, we cannot hold that the District Court acted in such a manner as to in anywise justify the issuance of a Writ of Mandamus.[14] On remand, the procedures outlined here should be pursued with such additions as the District Court deems necessary in the interests of justice.[15]

The Petition for Writ of Mandamus is denied. The cause is remanded for further proceedings.

### APPENDIX A

#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Action No. 80–CR–54 |
| Plaintiff, | ) | |
| v. | ) | A F F I D A V I T |
| KEVIN KROWN, ET AL., | ) | |
| Defendants. | ) | |

COMES NOW Daniel J. Sears, Attorney for James Feeney, and in response to the Government's Motion to Quash, hereby provides and attests to the following summary

13. The prosecution's invitation to allow adverse inferences to be drawn against it is no answer at all. Feeney is entitled to seek evidence which would tend to exculpate him or mitigate punishment.

14. We observe that little, if any, compromise on the part of the Government was made prior to this Petition. Had such compromise been so made, perhaps the ultimate disposition of this case could have been expedited.

15. Counsel for John C. White may be present when his client testifies. However, White or his counsel may not participate in the *in camera* proceedings. White's interest, unlike Feeney's, simply does not justify his presence *in camera.*

of testimony to be elicited from subpoenaed witness Philip B. Heymann, such testimony to include but not limited to the following:

1. To identify and explain the application of Department of Justice guidelines and regulations pertaining to the use of informants and the consensual monitoring of oral communications of third parties by the government and to determine the government's compliance therewith. If noncompliance is established, to determine violations of James Feeney's Fifth and Sixth Amendment rights.

2. To determine whether the Department of Justice through Mr. Heymann or, to his knowledge, other high officials was aware that two separate departmental agencies were running undercover investigations of the same subject matter at the same time, and if so, whether a legal and ethical duty resided in the government to protect James Feeney from Fifth and Sixth Amendment intrusions.

3. To inquire as to whether Mr. Heymann played any role in directing the extent of compliance with the subpoenae duces tecum served on Thomas Doonan and Raymond Levites returnable to this Court may 12, 1980, or, if not, whether he is aware of the extent of compliance in producing undercover tape recordings as requested.

4. To determine the accuracy of published quotes attributed to Mr. Heymann in the September 19, 1980, Rocky Mountain News which indicated that the Justice Department decided not to investigate Billy Carter's alleged involvement with Charter Oil in early 1979 when communicated by the informant, his knowledge as to when such a decision was reached, the reasons the Justice Department attached little or no merit to James Feeney's other undercover efforts, and why the Department did not communicate this position to the U.S. Attorney's Office in New York so that James Feeney could have avoided further placing his life in jeopardy, expending his personal funds, and involving himself in activity and associations which the government elected to later prosecute.

5. To inquire as to Mr. Heymann's knowledge of leaks and government investigative activity which, in part, thwarted James Feeney's investigative efforts.

6. To determine if Mr. Heymann is aware of the Justice Department's refusal to finance James Feeney's investigative efforts and the reasons behind such refusal.

/s/ Daniel J. Sears
Daniel J. Sears

I hereby certify that I have delivered a true and accurate copy of the foregoing Affidavit to Susan Roberts, Esq, 323 U.S. Courthouse, Denver, Colorado, this 29th day of September, 1980.

/s/ Daniel J. Sears