**James I. BRIGGS (amicus curiae), Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 89–977.**

District of Columbia Court of Appeals.

Argued Nov. 7, 1990.
Decided Sept. 24, 1991.

---

Carol Steiker, Public Defender Service, appointed by the court, with whom James Klein, Public Defender Service, Washington, D.C., was on the brief, for appellant.

James A. Meade, Asst. U.S. Atty., with whom Jay B. Stephens, United States Attorney, and John R. Fisher, Roy W. McLeese, III, and Craig Iscoe, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Curt S. Hansen, with whom Stephen G. Milliken,[1] Washington, D.C., was on the brief, for amicus curiae.

Before STEADMAN, Associate Judge, and MACK and BELSON,* Senior Judges.

BELSON, Senior Judge:

When this case was before us previously, we remanded so that the trial court could conduct a so-called *Frendak*[2] hearing to determine whether James I. Briggs had been competent to waive an insanity defense at his 1983 trial on charges of armed robbery, D.C.Code §§ 22–2901, –3202 (1989), and carrying a pistol without a license, D.C.Code § 22–3204 (1989). *Briggs v. United States,* 525 A.2d 583, 594–95 (D.C.1987). Upon remand, the trial court determined that Briggs had not been competent to waive an insanity defense at his

---

1. Stephen G. Milliken appeared as counsel *amicus curiae* during the remand proceedings and filed this appeal, along with a brief as *amicus curiae.* Due to his recent appointment to the bench, he was replaced by Curt S. Hansen, pursuant to an order of this court entered on August 20, 1990.

* Judge Belson was an Associate Judge of the court at the time of argument. His status changed to Senior Judge on July 24, 1991.

2. *Frendak v. United States,* 408 A.2d 364 (D.C.1979).

previous trial, but determined further that there was insufficient evidence to raise a fact issue as to whether his alleged crimes were the product of mental illness. Accordingly, the trial judge, in accordance with our opinion, *id.* at 595, ordered that Briggs's convictions should stand. Briggs did not appeal that order, either personally or through his counsel, a Public Defender Service attorney. The *amicus curiae,* appointed by the trial court to illuminate certain aspects of the *Frendak* issue, however, did file a notice of appeal. Addressing the threshold question whether *amicus* had the standing to appeal the trial court's ruling, we decide that *amicus* lacked standing to do so, and order dismissal of this appeal.

## I.

On his original appeal, Briggs contended (1) that the trial court erred in denying his request to be present at bench conferences during *voir dire* of the jury panel, (2) that the trial court abused its discretion when it denied defense counsel's request for re-cross-examination of a government witness, and (3) that the trial court erred in failing to conduct an inquiry to determine whether he voluntarily and intelligently waived an insanity defense as required by *Frendak, supra* note 2, 408 A.2d 364. *Briggs, supra,* 525 A.2d at 584.

This court rejected Briggs's first two contentions, *id.* at 584, 590–91, but found that the trial court erred in disposing of the productivity issue without making the appropriate *Frendak* inquiry, i.e., whether Briggs was competent to enter a voluntary and intelligent waiver of an insanity defense. *Id.* at 591–95. Accordingly, we remanded the case to the trial court with the specific instruction that it conduct a *Frendak* inquiry. We left within the trial court's discretion the decision whether to order psychiatric evaluations addressing Briggs's capacity to waive an insanity defense. We instructed that if as the result of the *Frendak* inquiry the trial court should conclude that Briggs had made a

voluntary and intelligent decision at trial to waive an insanity defense, that would end the matter. But if the court should conclude he had not, then the court was to determine whether he presently wished to waive that defense. If not, or if he was incapable of waiver at that time, "the trial court shall order a productivity examination." *Id.* at 594–95.

Upon remand, the trial court appointed an attorney with the Public Defender Service to represent Briggs. That counsel submitted a motion for appointment of counsel *amicus curiae* to present evidence and argue "(1) that the defendant (a) was incompetent to waive an insanity defense at the time of his trial and (b) remains incompetent to do so and (2) that the defendant is not guilty by reason of insanity of the charged offenses." Defense counsel, apparently concerned because Briggs still wished to claim that he was competent to waive the insanity defense, stated that

> [t]he issues presented on remand are difficult ones requiring factual investigation, expert testimony, and argument. Counsel for the defendant cannot now ethically argue his client's incompetency and productivity. Without an advocate of those conditions, the Court will be deprived of full presentation of the issues remanded by the Court of Appeals.

The trial court granted this motion and appointed counsel *amicus curiae* for the specific purposes outlined above. Those purposes did not embrace the issue of competence to stand trial.

During the remand proceedings,[3] *amicus* argued that the trial court was to determine, under this court's remand order, whether Briggs had been competent to stand trial in 1983. The trial court, correctly rejecting such an inquiry as beyond the scope of the remand order, reminded *amicus* that the Court of Appeals "[d]idn't remand it for a determination as to whether the defendant was competent to stand trial. They remanded it to determine whether the defendant was competent to eschew, and whether he did in fact eschew

---

**3.** Five remand hearings were held over a two year period: June 29, 1987; March 16, 1988; March 17, 1988; May 4, 1988; and June 20, 1989.

[,] an insanity defense, if he had one." In any event, this issue had been decided prior to trial and it was determined that Briggs was competent to stand trial in accordance with the standards enunciated in *Drope v. Missouri*, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975), and *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966).

*Amicus* called as expert witnesses a clinical psychologist and a psychiatrist. Both agreed essentially with the ultimate conclusion that Briggs had lacked the requisite mental capacity to waive the insanity defense at the time of his trial in 1983. Defense counsel, to the contrary, argued that Briggs had been competent to waive the defense. Briggs himself testified at the hearing, and denied that he suffered from mental illness. He stated that his rejection of the insanity defense was based upon his religious beliefs. The government argued in opposition, agreeing with *amicus* that Briggs had been incompetent to waive the insanity defense.

At the conclusion of the hearing on competency, the trial court found that because Briggs was "incapable of accepting the fact that he has an insanity defense himself," he was "unable to rationally decide whether to give up an insanity defense." Following further proceedings exploring the issue of productivity, the trial court, with all counsel in agreement, held that no evidence existed of a productivity relationship between any mental illness Briggs may have had and the commission of the crimes for which he was convicted.[4] The court, therefore, terminated the proceedings on remand, leaving Briggs's convictions in place.

*Amicus* filed a notice of appeal with this court. The only issue he raised in his subsequently filed brief related to Briggs's competency to stand trial. We then ordered *amicus* to show cause why this appeal should not be dismissed, citing *Givens v. Goldstein*, 52 A.2d 725, 726 (D.C.1947) (the role of *amicus curiae* is to advise or make suggestions to the court rather than to function as a party to the action). On February 1, 1990, we vacated the September order and allowed *amicus* to file his brief. That action, however, did not lay to rest the issue of the standing of *amicus* to prosecute an appeal.[5] We turn to that issue now.

## II.

This court held in *Givens* over forty years ago that *amicus curiae* is "not a party to the action, but is merely a friend of the court whose sole function is to advise, or make suggestions to, the court." *Givens, supra,* 52 A.2d at 726. The appearance of an attorney as *amicus* is not an appearance for a party. *Brown v. Wright,* 137 F.2d 484, 487 (4th Cir.1943). *Amicus* can neither take over the management of the case nor take an appeal therefrom. *Givens, supra,* 52 A.2d at 726, citing *Klein v. Liss,* 43 A.2d 757, 758 (D.C.1945). Rather, *amicus* must take the case as he finds it and does not, in contemplation of law, appear on behalf of any party. *Klein, supra,* 43 A.2d at 758; *see*

---

4. The inquiry into productivity was within the scope of the remand order which provided that if, following a conclusion by the court that appellant had not made a voluntary and intelligent waiver, "appellant cooperates with a productivity examination and the court concludes, after an appropriate review, that there is insufficient evidence to raise a fact issue of productivity, the convictions shall stand." *Briggs, supra,* 525 A.2d at 595.

5. Although a motions division of this court vacated the order to show cause, this merits division may reexamine the standing issue because, unless the motions division denies a motion to dismiss with prejudice, the merits division may reconsider the motion. *Kennedy v. Barry,* 516

A.2d 176, 178 n. 3 (D.C.1986); *District of Columbia v. Trustees of Amherst College,* 499 A.2d 918, 920 (D.C.1985).

Here, the standing issue was raised by this court *sua sponte* through a show cause order issued shortly after the filing of the notice of appeal. The order was vacated upon a response only from *amicus curiae* who urged, *inter alia,* that we "permit this novel and troubling matter [although referring, perhaps, only to the merits] to proceed to full briefing." The subsequently filed briefs of the Public Defender Service and the government both addressed the standing issue at length, and it was thoroughly explored at oral argument.

*also* 4 AM.JUR.2D *Amicus Curiae* § 3 (1962).

The record establishes the limited role assigned *amicus* in this case. Acting upon the motion of defense counsel, the trial court appointed *amicus* for the specific purpose of "presenting evidence and arguing to th[e] Court: (1) that the defendant (a) was incompetent to waive an insanity defense at the time of his trial and (b) remains incompetent to do so and (2) that the defendant is not guilty by reason of insanity of the charged offenses." It is clear that the role of *amicus* was limited to a factual investigation of these two defined issues, and the presentation of relevant evidence and legal authority to the trial court for its consideration. In essence, the function of *amicus* was to assist the trial judge in making his decision whether to interpose an insanity defense if Briggs chose not to raise it. Thus, we agree with the contention of the government and Briggs that because *amicus* acted in a purely advisory capacity during the remand proceedings, he was neither a party to the action nor counsel for a party and thus lacked the requisite standing to appeal the outcome of the proceedings.

In reaching this conclusion, we reject the argument of *amicus* that the role of *amicus* is necessarily broader where a criminal defendant's mental competency is in question. This appeal, or purported appeal, has required us to apply the general principles governing participation of *amicus* in legal proceedings to the role of *amicus* in a *Frendak* inquiry. In *Frendak*, the court identified three different types of mental capacities which require three separate inquiries:

> (1) whether the defendant is presently competent to stand trial; (2) if so, whether he or she, based on present mental capacity, can intelligently and voluntarily waive the insanity defense and has done so; (3) if not, whether the court *sua sponte* should impose the insanity defense based on evidence of the defen-

dant's mental condition at the time of the alleged crime.

*Briggs, supra,* 525 A.2d at 591 (quoting *Anderson v. Sorrell,* 481 A.2d 766, 769 (D.C.1984) (summarizing *Frendak*)); *see also Frendak, supra* note 2, 408 A.2d at 380–81. The second, which has become known as the *Frendak* inquiry, was involved in this case. It was more fully described as follows:

> [W]henever the evidence suggests a substantial question of the defendant's sanity at the time of the crime, the trial judge must conduct an inquiry designed to assure that the defendant has been fully informed of the alternatives available, comprehends the consequences of failing to assert the defense, and freely chooses to raise or waive the defense.

*Frendak, supra* note 2, 408 A.2d at 380.

*Amicus* contended during oral argument on this appeal that his role as *amicus* in a *Frendak* hearing surpassed that of a "general" *amicus,* for he represented the "sane alter ego" of defendant Briggs, a representation that defense counsel likely was unable to undertake because of defense counsel's obligation to follow the instructions of his possibly incompetent client and to advocate zealously in accordance with those instructions. Thus, as we understand *amicus'* contention, where a defendant denies incompetence, two counsel are necessary in every *Frendak* hearing, defense counsel representing the possibly incompetent defendant (and following his instructions) and *amicus* representing the defendant's "sane alter ego." [6]

Although the argument of *amicus* is not frivolous, it is inconsistent with both the nature of the role of *amicus* and the specific role assigned *amicus* by the trial court in this case. An attorney who is appointed as counsel *amicus curiae* for purposes of a *Frendak* or other mental competency hearing has the limited purpose of performing, according to the specific mandate of the court, a factual investigation and appropriate factual and legal presentation on the issues specified by the court. *Amicus* does

---

**6.** It would be more accurate to argue that *amicus* served as counsel for that side of defen-

dant's personality that would argue that defendant was incompetent to waive the defense.

not act as defendant's representative, but as a friend of the court which considers *amicus'* presentation in deciding whether to impose an insanity defense on defendant.

 The trial court is, of course, not bound by *amicus'* factual or legal submissions, as *amicus* "has no right to complain if the court refuses to accept his suggestions, for it is not the function of an *amicus curiae* to take upon himself the management of a cause." 4 AM.JUR.2D *Amicus Curiae* § 6 (1962); *see Klein, supra,* 43 A.2d at 758. Therefore, once *amicus* completed the required factual investigation and made the appropriate presentation to the trial court, his role of *amicus* in the proceedings is terminated.

We are not convinced that there is a special and compelling need to expand the function of *amicus* in cases involving mental competency beyond the function *amicus* serves in other areas of litigation. Counsel for Briggs points out that "each party before the court, in addition to the court itself, has the obligation and the opportunity to raise the question of the defendant's competency to stand trial should the need arise." The same may be said about competency to waive a defense of insanity. Indeed, counsel for Briggs in the original appeal raised the *Frendak* issue in this case. In our view, the narrow hiatus that may come into existence should a trial court err in disposing of a competency issue presented by *amicus* or otherwise and no party sees fit to appeal does not justify transforming the role of *amicus* to that of party or counsel to a party as to competency issues. The same problem would arise from the trial court's erroneous handling of an issue presented by *amicus* in any litigation. It would not be the subject of an appeal unless it is challenged by a party to the action.

 There is a second reason that precludes *amicus* here from pursuing an appeal. Even if we should assume, *arguendo,* that an *amicus* has the standing to take an appeal, the resulting appeal would necessarily be limited to the issues that *amicus* was appointed to deal with. Here *amicus* was not appointed to deal with competency to stand trial, the only issue he attempts to raise on appeal.

 Finally we observe that, pursuant to statute, this court has jurisdiction of appeals from all final orders and judgments of the Superior Court. D.C.Code § 11–721(a) (1989). Only a party aggrieved by an order or judgment may appeal as of right to this court. D.C.Code § 11–721(b) (1989). For the reasons we have given, *amicus* is not such a party. Nor are we in a position to exercise supervisory power over the issues *amicus* would raise, as D.C.Code § 17–306 (1989) provides this court has jurisdiction over matters "lawfully brought before it for review," and this case does not fall in that category because no party has appealed.

Because we conclude that *amicus curiae* lacks standing to bring this appeal, it must be dismissed.

*So ordered.*

MACK, Senior Judge, dissenting:

Out of this maze of complex legal and factual issues, unconventional party alliances, multiple proceedings and numerous court findings, one stark conclusion follows from the position taken by my colleagues: we are without jurisdiction to review the merits of findings by the trial court which we ordered on remand—findings which we thought to be constitutionally required in order to sustain the conviction of Mr. Briggs for armed robbery. *See Briggs v. United States,* 525 A.2d 583, 594–95 (D.C.1987) (*Briggs I*). Today, we dismiss this case because *amicus,* appointed by the trial court, presumably to insure "full presentation of the issues remanded," has no standing in this court to represent Mr. Briggs on appeal. If that be the case, and the majority may be technically correct, I suggest that the posture of this case, and the status of Mr. Briggs, require the appointment of additional counsel and/or review by this court in its supervisory power. *See* D.C.Code § 17–306 (1989 Repl.).

The urgency of this matter is underscored by a brief explanation. In *Briggs I,*

*supra,* we remanded this case to the trial court for an inquiry and a determination, *inter alia,* as to whether appellant had made a voluntary and intelligent decision at the time of trial to waive an insanity defense in accord with the dictates of *Frendak v. United States,* 408 A.2d 364 (D.C.1979). *Briggs I, supra,* 525 A.2d at 594–95. Because of a perceived conflict of interest on the part of trial counsel (Public Defender Service), counsel took the commendable view that because of its client's insistence as to competency, it could not ethically argue on remand its client's incompetency and productivity. It prevailed upon the court to appoint *amicus* for these purposes. The trial court, relying specifically upon the language of the remand order, rejected the argument of *amicus* that it should redetermine the issue of appellant's competency to stand trial. The court found, however, that appellant was neither competent at trial or at the time of the hearing to knowingly and intelligently waive the defense of insanity. Following through on our instructions, the trial court considered the issue of whether there was a causal relationship between the criminal conduct and appellant's mental disease. The court found that there was no productivity issue and thus that the convictions for armed robbery and carrying a pistol without a license should stand.

It is this rather bizarre set of circumstances that has prompted *amicus,* appointed by the trial court, to raise in this court the irrefutable fact that due process forbids the conviction of a legally incompetent defendant[1] and to suggest that sufficient doubt of appellant's competency to stand trial exists to require another determination of that fact. *Amicus* has been permitted at least the privilege of filing a notice of appeal. Indeed a previous division of this court has ruled that *amicus* could brief the issues before this court and we have heard argument. I would urge that *amicus* be appointed as co-counsel by this court and that the merits of the case be reached.

This case is troubling because in context, there is a real question (which we did not address in *Briggs I* in view of our disposition) as to whether Briggs was properly found competent to stand trial in the first instance. Certainly the evaluations and recommendations of the experts cast significant doubt on this issue. *See Briggs I, supra,* 525 A.2d at 585–87. Moreover, facially speaking, since a defense is a necessary component of a trial, it is difficult to see how a defendant who has been found incompetent to waive that defense at trial (except for the passage of time and a waxing and waning of a long term mental disease) could have been found to have been competent to stand trial. To the extent that *Frendak* rejected the arguments that the two findings were identical, an argument advanced by the government in *Frendak* in purported reliance on *Whalem v. United States,* 120 U.S.App.D.C. 331, 346 F.2d 812 (en banc), *cert. denied,* 382 U.S. 862, 86 S.Ct. 124, 15 L.Ed.2d 100 (1965), I point out that *Frendak* did not reject *Whalem. Frendak* did not hold that the two findings could not be identical. Rather, *Frendak* interpreted *Whalem* to require, on a case-by-case basis, that a trial judge, before interposing a defense of insanity for a defendant who has been found competent to stand trial, conduct a second inquiry as to competency if the defendant chooses not to utilize that defense to avoid conviction at trial. Thus, *Frendak,* in effect, guarantees to a defendant not only the right to be able to rationally understand his (or her) predicament but the right to make intelligent decisions central to his defense.

In the instant case, I view the argument of *amicus*—that the question of appellant's competency to stand trial must be revisited—to be a correct one. It is true that the trial court has complied with the letter of our order on remand. *See Briggs I, supra,* 525 A.2d at 594–95. It found that, at the time of trial, Mr. Briggs was not competent to waive the defense that he waived and that he was not competent to do so at the time of the hearing. In my view, on this

---

**1.** *See Drope v. Missouri,* 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1974); *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966).

record, because Mr. Briggs was not competent to intelligently waive the defense at trial, he could not have been competent to stand trial.

As I have noted above, *Frendak* is not to the contrary. *Frendak* speaks of a second inquiry. The first and second inquiries are not separate as to purpose but supplementary as to purpose. Both inquiries insure that a defendant whose sanity has been questioned is competent. *See also Anderson v. Sorrell,* 481 A.2d 766 (D.C.1984). The first inquiry insures that the defendant is competent to understand that he has a right to assert a defense; the second inquiry insures that he is competent to waive that defense. The second inquiry arises only because of the first inquiry. The second inquiry insures that a defendant whose sanity has been questioned, but who has been found before trial to be competent to stand trial *is in fact competent at trial.* This is why in *Frendak* we held that it was error for the trial court to interpose a defense of insanity for such a defendant without determining whether the defendant was then competent to waive that defense. Put somewhat indelicately, *Frendak* protects the right of a defendant who is somewhat out of the norm to decide whether he or she wants to accept the risk of going to jail or to a mental institution.

The sanity of Mr. Briggs, like that of the defendant in *Frendak,* was questioned before trial. Like Frendak, Briggs was found competent to stand trial. Like Frendak, Briggs wished to waive the defense of insanity at trial. As in *Frendak,* no second inquiry was made. Unlike *Frendak,* no defense of insanity was interposed. Unlike *Frendak,* the question of whether Briggs was insane at the time of the commission of an offense has not been put to a jury but has been relegated to the decision of a trial judge many years after the commission of the crime. Briggs has been convicted of armed robbery and sentenced to consecutive sentences of fourteen to forty-two years and two to six years. Yet, past and present records reek of reports that he is or was a profoundly ill man, as well as some conclusions that he was incompetent for trial on June 6, 1983. Because he has

been found to have been incapable of making the intelligent choice as whether to go to jail or a mental hospital within the rationale of the balance sought by *Frendak, supra,* (*see* Kern, J., concurring, 408 A.2d at 382), it seems somehow cruel to make him bear the consequence of our remand without the opportunity to challenge in this court the possibility of inconsistency between pre-trial and post-trial findings. This would be the "exercise in arid logic [which should not render] ... constitutional guarantees counterproductive and put in jeopardy the very human values they were meant to preserve." *Frendak, supra,* 408 A.2d at 375, citing *North Carolina v. Alford,* 400 U.S. 25, 39, 91 S.Ct. 160, 168, 27 L.Ed.2d 162 (1970).