Clarence R. TURNER (No. 95–SP–326), Walter English (No. 95–SP–1165), Joel Anthony Edwards (No. 95–SP–1170), and Michael Hawkins (No. 95–SP–1273), Petitioners,

v.

Honorable John H. BAYLY, Jr., Respondent.

District of Columbia Court of Appeals.

Argued Jan. 17, 1996.
Decided March 5, 1996.

Christopher Warnock, Washington, DC, with whom Donna Maul (Turner), Kathleen Sutherland (Turner), Colin Dunham (Turner), Willie N. Hewett (Edwards), and Linda Stroufe (Hawkins), were on the indicated petitions, for petitioners Turner, Edwards, and Hawkins.

David Reiser, Washington, DC, with whom James Klein and Tanya Chutkan, Public Defender Service, were on the petition, for petitioner English.

Jonathan Gleklen, Washington, DC, with whom Whitney Debevoise was on the opposition, for respondent.

Eric H. Holder, Jr., United States Attorney, and John R. Fisher and Matthew G. Olson, Assistant United States Attorneys, filed a Response of the United States to the Petitions for Writs of Mandamus.

Before FERREN, TERRY, and SCHWELB, Associate Judges.

FERREN, Associate Judge:

Petitioners seek mandamus relief from denial of their respective demands for a jury trial. D.C.Code § 16–705(b) (Repl.1989 & 1995 Supp.) confers the right to a jury trial for all offenses (except contempt of court) carrying maximum prison terms of "more than 180 days." We hold that because peti-

tioners are charged with crimes that carry maximum prison terms of "six months"— which in all cases will amount to 181 to 184 days—they are entitled to trials by jury, and thus to the relief they seek.

## I.

Each petitioner has been charged with one count of an offense punishable at most by six months in prison. Turner is charged with unlawful entry, D.C.Code § 22–3102 (Repl. 1989); Edwards, Hawkins, and English are charged with threats, *id.* § 22–507. Violation of the unlawful entry statute is punishable "by a fine not exceeding $100 or imprisonment in the Jail for not more than six months, or both, in the discretion of the court." *Id.* § 22–3102. An individual convicted of threats "shall be fined not more than $500 or imprisoned not more than 6 months, or both, and, in addition thereto or in lieu thereof, may be required to give bond to keep the peace for a period not exceeding 1 year." *Id.* § 22–507.

In 1992, the Council of the District of Columbia acted to amend the jury trial statute, D.C.Code § 16–705(b), when it enacted the Judicial Resources Conservation title of the Criminal and Juvenile Justice Reform Amendment Act of 1992, D.C.Law 9–272, 40 D.C.Reg. 796 (effective May 15, 1993) (hereafter "1992 amendment"). Before that amendment, defendants charged with criminal offenses (except contempt of court) punishable by a fine of $300 or imprisonment for more than 90 days were entitled to jury trials. *See* D.C.Code § 16–705(b) (1989 Repl.). By increasing the number of days in prison required before a defendant is entitled to trial by jury, the 1992 amendment reduced that statutory right to cases involving an offense punishable by a fine of more than $1,000 or "by imprisonment for more than 180 days." 1992 Amendment Act § 202, 40

D.C.Reg. at 799. As amended, therefore, § 16–705(b) now provides in relevant part:

(b) In any case where the defendant is not under the Constitution of the United States entitled to a trial by jury, the trial shall be by a single judge without a jury, except that if—

(1) the case involves an offense which is punishable by a fine or penalty of more than $1,000 or by imprisonment for more than 180 days (or for more than six months in the case of the offense of contempt of court). . . .

D.C.Code § 16–705(b) (1989 Repl. & 1995 Supp.). Because the threats and unlawful entry statutes provide for maximum sentences of "six months" in prison, compared to the "180 days" maximum allowed in § 16–705(b) for denial of the right to a jury, petitioners ask this court to issue writs of mandamus directing Judge Bayly to empanel a jury for trial in each of their cases.[1]

## II.

Judge Bayly denied each petitioner's jury demand on the ground that the statutory provision denying a jury trial when the maximum prison term does not exceed "180 days" is intended to withhold a jury when imprisonment does not exceed "six months" or "6 months," the terms used in the penalty provisions of the criminal statutes at issue here.

### A.

Contesting the Judge's interpretation, petitioners submit that the plain language of § 16–705(b), as amended ("180 days"), when compared to the plain language of the unlawful entry and threats statutes ("six months"), evidences their statutory right to a jury trial simply because six months is always more than 180 days.[2] Petitioners note that the

---

1. This court has the power to issue extraordinary writs in aid of its jurisdiction pursuant to the All Writs Statute, 28 U.S.C. § 1651 (1994), and to the "inherent power of Congress-created courts." *Morrow v. District of Columbia*, 135 U.S.App. D.C. 160, 167, 417 F.2d 728, 735 (1969). We discuss the appropriateness of mandamus relief in this case in Part III.

2. Petitioners also contend the Constitution ensures their right to a jury trial. They claim in that regard that *Blanton v. City of North Las Vegas*, 489 U.S. 538, 543, 109 S.Ct. 1289, 1293, 103 L.Ed.2d 550 (1989) was wrongly decided. We decline to decide constitutional issues when there is an adequate statutory basis for decision; thus, we do not formally reach the constitutional issues petitioners purportedly raise. *See Olevsky v. District of Columbia*, 548 A.2d 78, 81 (D.C.

number of days in any consecutive six calendar month period varies from 181 to 184 days. They find support for interpreting "month" as a calendar month in *Guaranty Trust & S.D. Co. v. Green Cove Springs & M.R. Co.*, 139 U.S. 137, 145, 11 S.Ct. 512, 515, 35 L.Ed. 116 (1890), where the Supreme Court said that "the word 'month,' when used in contracts or statutes, must be construed, where the parties have not themselves given to it a definition, and there is no legislative provision on the subject, to mean calendar and not lunar months." [3]

Petitioners buttress their argument by pointing to the fact that the Council, by distinguishing between "180 days" and "six months" in the very text of § 16–705(b) itself, clearly intended the terms to have different meanings. Under the amended statute, a contempt of court charge is jury-demandable when it carries a penalty of "more than six months" of imprisonment, while all other offenses justify a jury trial when they carry prison sentences of "more than 180 days." According to petitioners, therefore, under the plain language of the statute, persons charged with crimes punishable by up to six months of imprisonment are entitled to a jury trial, since "six months," by definition, is "more than 180 days." *See Peoples Drug Stores v. District of Columbia*, 470 A.2d 751, 753 (D.C.1983) (en banc) ("primary and general rule of statutory construction is that the intent of the lawmaker is to be found in the language that he [or she] has used").

### B.

Judge Bayly sees the matter differently. Referring to legislative history, he concludes that the Council, by amending § 16–705(b), intended to eliminate the statutory right to a jury trial in all cases where the Constitution does not require one: generally, when imprisonment will not exceed six months. *See Blanton v. City of North Las Vegas*, 489 U.S.

538, 543, 109 S.Ct. 1289, 1293, 103 L.Ed.2d 550 (1989) (establishing presumption that offenses carrying maximum prison term of six months or less are petty and not jury-demandable). He notes that the original draft of the amendment to § 16–705(b) provided for jury trials in cases involving potential punishment of "$1,000 or by imprisonment for more than six months." COMMITTEE ON THE JUDICIARY, CRIMINAL AND JUVENILE JUSTICE REFORM AMENDMENT ACT OF 1992, BILL 9–374, at 8 (Comm.Print November 5, 1992). He then points out that this proposed language was amended to read "$1,000 or by imprisonment for more than 180 days"—a change the judge believes reinforces, rather than negates, his view that for purposes of applying § 16–705(b), as amended, "180 days" and "six months" are synonymous.

According to Judge Bayly, the Council intended only to clarify, not to alter, the meaning of "six months" when it amended the language of the proposed amendment to § 16–705(b) to read "180 days." After Councilmember Brazil had moved to substitute "180 days" for the term "six months," Judiciary Committee Chair Rolark commented:

> Mr. Brazil has introduced one amendment, which is before us, which would clarify the phrase "6 months" to read instead "180 days," so that we would know exactly the date and period after which the defendant can constitutionally demand a jury trial. Right now, the six months would make it a little too indeterminate.

*Hearings Before the Council of the District of Columbia,* (December 1, 1992) (statement of Chairperson Rolark). Judge Bayly accordingly argues that Councilmember Brazil's "180–day" clarification of the term "six months" was not intended to have substantive significance. If, contrary to Judge Bayly's interpretation, we were to conclude that the word "month," when used in criminal

---

1988) ("This court, like other courts, generally declines to decide a question on constitutional grounds if it may be satisfactorily resolved on a statutory basis which avoids the constitutional issue.").

**3.** *See also* 74 AM.JUR.2d *Time* § 9 (1974) ("the term 'month' is now universally computed by the calendar, unless a contrary meaning is indicated

by the statute or contract under construction"); BLACK'S LAW DICTIONARY 1007 (6th ed. 1990) ("Word 'month,' unless otherwise defined, means 'calendar month,' or time from any day of any of the months as adjudged in the calendar to corresponding day, if any, if not any, to last day, of next month.").

statutes, does not mean 30 days, then he asks us to conclude that the attempted clarification should be characterized (in the words of his opposition to the mandamus petitions) as "a mere 'scrivener's error,' a drafting mistake inconsistent with the legislature's clear intent to eliminate jury trials not required by the Constitution." *See United States Nat'l Bank of Oregon v. Independent Ins. Agents of Am., Inc.*, 508 U.S. 439, 461–63, 113 S.Ct. 2173, 2186, 124 L.Ed.2d 402 (1993).

Reinforcing his argument, the judge suggests that the Council cannot have had in mind any difference between the "180 days" used in the amendment as finally adopted, and the preexisting language of § 16–705(b) that limits jury trials in contempt cases to offenses punishable by "more than six months." He stresses that Congress originally had drafted § 16–705(b), including the parenthetical clause carving out the six month exception for contempt cases,[4] whereas a different legislature, the Council had amended § 16–705(b) to insert the 180 day provision.[5] As originally proposed, therefore, the Council's amendment would have resulted in the following revision of § 16–705(b), providing for jury trials when:

> the case involves an offense which is punishable by a fine or penalty of more than $1,000 or by imprisonment for more than six months (or for more than six months in

the case of the offense of contempt of court). . . .

From this awkward, redundant proposal Judge Bayly infers that the Council never looked at the entire provision; otherwise, the legislators initially would have cleaned up the language. From this perspective, therefore, Judge Bayly contends that the Council's eventual use of "180 days," without focusing on the separate contempt clause, fortuitously created an ostensible, though nonexistent, difference derived, paradoxically, from the intention to make clear that "180 days" and "six months" mean the same thing.

Judge Bayly next emphasizes that interpreting "180 days" to mean something different from "six months" would make the 1992 amendment a legal nullity when adopted. At the time the Council adopted the 1992 amendment, the existing maximum sentences for virtually all crimes were less than or equal to "90 days,"[6] or greater than or equal to "six months."[7] Accordingly, says Judge Bayly, the Council, in upping the threshold from 90 days to 180 days, must have intended to eliminate the statutory right to a jury trial for the next category of offenses punishable by six months, for under any other reading the amendment would have no practical effect. *See United Savings Ass'n. of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 375, 108 S.Ct. 626, 632–33, 98 L.Ed.2d 740 (1988) (rejecting interpreta-

---

4. District of Columbia Court Reform and Criminal Procedure Act of 1970, Pub.L. No. 91–358, 84 Stat. 473 (1970). *See also In re Evans*, 411 A.2d 984, 989–90 (D.C.1980) (discussing legislative history of § 16–705).

5. Criminal and Juvenile Justice Reform Amendment Act of 1992, D.C.Law 9–272, 40 D.C.Reg. 796 (effective May 15, 1993). *But see Thomas v. United States*, 650 A.2d 183, 186 & n. 6 (D.C. 1994) (presuming D.C. Council knows meaning of words used in statute originally enacted by Congress).

6. *See, e.g.,* D.C.Code § 22–1107 (1989 Repl.) (unlawful assembly; profane and indecent language); § 22–1112 (lewd, indecent or obscene acts); *id.* § 22–1121 (disorderly conduct); *id.* § 22–3304 (vagrancy); *id.* § 22–3813 (shoplifting); *id.* § 22–3816 (taking property without right).

7. *See, e.g.,* D.C.Code § 22–507 (1989 Repl.) (threats to do bodily harm); *id.* § 22–1305 (false personation of inspector of departments of Dis-

trict); *id.* § 22–3102 (unlawful entry on property); *id.* § 22–3111 (disorderly conduct in public buildings or grounds; injury to or destruction of United States property); *id.* § 22–3426 (debt adjusting). *See also* Omnibus Criminal Justice Reform Amendment Act of 1994, D.C.Law 10–151, 41 D.C.Reg. 2608 (effective August 20, 1994) (reducing maximum period of incarceration for various crimes from "1 year," "not more than 1 year," "twelve months," "two years," "not more than two years," and "not more than five years," to maximum of "180 days").

We are aware of one statute that provided for a maximum term of imprisonment between 90 days (the original jury trial threshold) and 180 days (the amended jury threshold) at the time the Council enacted the 1992 amendment. *See* D.C.Code § 22–902 (1989 Repl.) (refusal or neglect of guardian to provide for child under 14 years of age; punishable by "not more than 3 months" of imprisonment).

tion of Bankruptcy Code that would render provision a "practical nullity and theoretical absurdity"); *Mountain States Tel. & Tel. Co. v. Pueblo of Santa Ana,* 472 U.S. 237, 249, 105 S.Ct. 2587, 2594, 86 L.Ed.2d 168 (1985) (employing "elementary canon of construction that a statute should be interpreted so as not to render one part inoperative" (quoting *Colautti v. Franklin,* 439 U.S. 379, 392, 99 S.Ct. 675, 684, 58 L.Ed.2d 596 (1979))).

Finally, Judge Bayly argues that sound judicial policy supports his interpretation. He says that the interpretation equating six months and 180 days would promote consistency in sentencing by eliminating the possibility, for example, that an individual sentenced in February would be incarcerated for fewer days than an individual sentenced in March. He refers to Texas cases holding that the terms "six months" and "180 days" are equivalent when used in criminal sentencing statutes. *See, e.g., Lopez v. State,* 651 S.W.2d 931, 932 (Tx.Ct.App.1983) ("Texas courts have held that a 'month' means a solar month, that is, thirty days, not a calendar month, when the term is not defined by statute and is used in assessing punishment for a criminal offense.").

## C.

Judge Bayly's principal source for his position is legislative history. We have said that, despite required deference to plain statutory language, "where the words of a statute have a superficial clarity, a review of the legislative history or an in-depth consideration of alternative constructions that could be ascribed to statutory language may reveal ambiguities that the court must resolve." *Peoples Drug Stores,* 470 A.2d at 754. For this reason, we accept the propriety of Judge Bayly's reference to legislative history here. Contrary to Judge Bayly's reading, however, we believe the history of § 16–705(b) is in-

conclusive. Councilmember Rolark's announced support of Councilmember Brazil's amendment to "clarify the phrase '6 months' to read instead '180 days'" reveals a desire to make "the period after which the defendant can constitutionally demand a jury trial" precise, rather than "a little too indeterminate." This desire does not necessarily convey an understanding that "six months" and "180 days" are equatable. The Council may have intended to reduce the number of jury triable offenses by increasing the non-jury limit to the constitutional maximum, but in doing so its members did not necessarily believe that the two periods—"180 days" and "six months"—were exactly the same. Ms. Rolark's comment itself indicates that she recognized a difference in fact, even though she may not have realized that the change in language could have unintended legal consequences. On balance, therefore, we believe the legislative history shows that the Council was aware that the term "six months" (which appears in the threats and unlawful entry statutes) was not temporally the same as the term "180 days," although the Council may have assumed there was no legal difference.

This apparent legislative awareness of the difference between 180 days and an "indeterminate" six months overcomes any argument that the Council, by failing to contemplate the entire text of § 16–705(b) as originally enacted by Congress, can be said to have crafted a provision using different but synonymous terminology. The Council may have believed its choice of language—"180 days"—would accomplish the legal result that "six months" terminology would have achieved. But legislative intent to minimize the right to a jury cannot be conclusive when there was another, accompanying intent: a preference for precision over indeterminacy. Who can say that one intent trumped the other? The Council has not told us beyond the language used.[8]

---

**8.** Judge Bayly premises his argument on the belief that the term "180 days" in § 16–705(b) can be stretched to mean "six months." He has not argued that (1) Congress, in adopting the threats and unlawful entry statutes, used "six months" to mean "180 days," or that (2) the Council, in amending § 16–705(b), intended implicitly to change/interpret "six months" in the unlawful entry and threats statutes to mean "180 days."

In short, his argument proceeds only in one direction, expanding the meaning of "180 days" rather than contracting the ordinary (calendar) meaning of "six months." We therefore limit our inquiry to whether, by enacting the 180–day provision of § 16–705(b), the Council actually intended to cover six calendar months (as many as 181 to 184 days).

Judge Bayly's argument that the 1992 amendment would have been a legal nullity at the time of enactment, if not interpreted to deny jury trials for offenses carrying six month prison terms, is intriguing but unpersuasive. The 1992 amendment was the first of two steps the Council anticipated making to withdraw the statutory right to a jury from many categories (and thus large numbers) of misdemeanor trials. The first was to increase from 90 to 180 days the maximum prison term for which trials without a jury could be imposed; the second was to reduce the maximum sentences for various misdemeanors from a year or more to 180 days.[9] At the legislative meeting addressing the first step in this process, at which "180 days" was substituted for "six months" in the proposed amendment to § 16–705(b), Councilmember Brazil offered another amendment: adoption of the Misdemeanor Streamlining Amendments Act of 1992, Bill 9–616 (introduced July 7, 1992 by Councilmember Brazil). He thus proposed that the Council take the second step at the same time, i.e., to reduce the penalties for a large number of misdemeanors by bringing them "under the same provision that's set forth in this bill" amending the jury trial statute. *Hearing Before the Council of the District of Columbia,* (December 1, 1992) (statement of Councilmember Brazil). Speaking in support of enacting Bill 9–616 along with the 1992 amendment, Councilmember Brazil emphasized: "[I]f we're going to do something, why are we doing it halfway?" and "Let's do it the whole way not a half measure." *Id.*

The Council rejected the streamlining amendment at that time, however, preferring to study the issue further and to hold a full public hearing before enacting such sweeping legislation. *Id.* The Council later adopted

misdemeanor streamlining legislation, the Omnibus Criminal Justice Reform Amendment Act of 1994, D.C.Law 10–151, 41 D.C.Reg. 2608 (effective August 20, 1994), which reduced the penalty for over forty misdemeanors to a maximum of 180 days and thereby effectively eliminated the right to jury trial for those misdemeanors because they now fell within § 16–705(b), as amended. When amending § 16–705(b), the Council anticipated that future legislation would bring the statutory penalties for certain misdemeanors below the new 180–day cap on non-jury triable offenses; any short-term legal ineffectiveness of the 180–day amendment to § 16–705(b), therefore, has limited, if any, interpretive significance. In any event, the failure of the 1992 amendment to reach any "six month" misdemeanor at most indicates legislative mistake; it does not compel a statutory interpretation that puts a gloss on language not assuredly called for.

We discern no sentencing policy ascribable to the 1992 amendment. Judge Bayly's understanding, based on Texas law, that six months means 180 days for sentencing purposes is not importable to § 16–705(b), not only because Texas decisions are inapplicable here but also because the jury trial statute does not purport to influence sentencing decisions.

■ Finally, reasoning by analogy to the rule of lenity that applies in construing ambiguous criminal statutes,[10] we agree entirely with petitioners' position that we should interpret any statutory ambiguity in favor of extending the fundamental right to a jury trial, not of limiting it. *See Duncan v. Louisiana,* 391 U.S. 145, 149, 88 S.Ct. 1444, 1447, 20 L.Ed.2d 491 (1968) (right of jury trial is "fundamental to the American scheme of jus-

---

9. Mayor Sharon Pratt Dixon sent a letter to John A. Wilson, Chair of the Council, on November 27, 1991. In this letter, the Mayor indicated that she was "transmitting to the Council for its consideration" a draft bill of the Criminal and Juvenile Justice Reform Act of 1991. The Mayor also noted that she was considering a proposal to reduce the maximum penalties for some crimes below the jury-demandable threshold. She stated, "During the next few weeks, my administration will be meeting with the United States Attorney to identify the crimes for which he recommends that the penalties be increased

or decreased. After these consultations, I will evaluate his recommendations and will propose appropriate statutory amendments."

10. *See Chemalali v. District of Columbia,* 655 A.2d 1226, 1230 (D.C.1995) (well-established principle requires that penal statutes be strictly construed); *Luck v. District of Columbia,* 617 A.2d 509, 515 (D.C.1992) (noting policy of requiring legislature to use clear language in drafting criminal statutes).

tice"); *Jackson v. United States*, 498 A.2d 185, 187 (D.C.1985) (the purpose of jury trials is "to prevent the possibility of governmental oppression").

■ We therefore conclude that in § 16–705(b), as amended, "180 days" means literally 180 days, not "six months," which is a different, less precise—indeed, longer—period of time. We rely on (1) the plain language of D.C.Code § 16–705(b), as amended, where both "180 days" and "six months" appear, suggesting different meanings; (2) the common understanding, including Supreme Court authority, that "month" means a calendar month, not a lunar month with a fixed number of days, unless otherwise expressly defined; (3) the inconclusive legislative history that reveals the Council's unresolved tension between a desire to reduce the number of jury-triable offenses, and a determination to refer in precise terms to the minimum prison sentence justifying a jury trial; and (4) the lenity principle as applied to legislation that ambiguously contracts a valued fundamental right. We perceive no policy inherent in § 16–705(b) that affects our reliance on the statute's plain language.

■ In sum, we hold that prosecutions under the threats and unlawful entry statutes, with their maximum penalties of six months in prison, entitle the petitioners to trials by jury under D.C.Code § 16–705(b), as amended.

### III.

■ We recognize that the writ of mandamus is an extraordinary writ that should be issued only in exceptional circumstances.

See *Yeager v. Greene*, 502 A.2d 980, 983 (D.C.1985). Nonetheless, as the Supreme Court has stated, "Whatever the difference of opinion there may be in other types of cases, we think the right to grant mandamus to require jury trial where it has been improperly denied is settled." *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 511, 79 S.Ct. 948, 957, 3 L.Ed.2d 988 (1958); *cf. Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 472, 82 S.Ct. 894, 896–97, 8 L.Ed.2d 44 (1962) (judicial responsibility to "grant mandamus where necessary to protect the constitutional right to trial by jury").

[5] Despite the court's power to grant mandamus to protect the right to jury trial, however, courts often decline to consider mandamus petitions when the right to jury trial is less than "clear and indisputable." *Foster v. Canan*, 661 A.2d 636 (D.C.1995) (citations and internal quotation marks omitted);[11] *cf. United States v. Kronheim*, 80 A.2d 280, 281 (D.C.1951) (denying government's petition for mandamus to deny jury trial because "the question of when an accused has a constitutional right to trial by jury is by no means a simple one."). There is a "clear and indisputable" denial of the statutorily protected right to a jury trial presented in this criminal case.[12] We therefore conclude that mandamus would be the appropriate form of relief. See *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 289, 108 S.Ct. 1133, 1143–44, 99 L.Ed.2d 296 (1988); *Bankers Life & Casualty Co. v. Holland*, 346 U.S. 379, 384, 74 S.Ct. 145, 148–49, 98 L.Ed. 106 (1953); *Foster*, 661 A.2d at 636.

---

**11.** The "clear and indisputable" test we referred to in *Foster* originated in *United States ex rel. Bernardin v. Duell*, 172 U.S. 576, 582, 19 S.Ct. 286, 287–88, 43 L.Ed. 559 (1899). See *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 289, 108 S.Ct. 1133, 1143–44, 99 L.Ed.2d 296 (1988); *Bankers Life & Casualty Co. v. Holland*, 346 U.S. 379, 384, 74 S.Ct. 145, 148–49, 98 L.Ed. 106 (1953).

**12.** In *Stebbins v. Stebbins*, 673 A.2d 184, 191 (D.C.1996), this court denied mandamus relief in a civil case after weighing the concerns of judicial efficiency against the hardships suffered by the party denied the right to jury trial. While emphasizing "the discretionary nature of the

writ" and the inappropriateness of blanket rules, we concluded that the denial of a jury trial in *Stebbins* was insufficient reason to depart from the "policy against piecemeal review." at 191–192. We also noted in *Stebbins*, however, that we were not deciding the appropriateness of mandamus relief in criminal cases. See op. at 192 n. 9. We now conclude that the historic sanctity of the jury trial right, the clear and indisputable right to a jury presented here, and the substantial unfairness of compelling the defendants to go through two criminal proceedings in the event of convictions in nonjury trials weigh in favor of issuing writs of mandamus to preserve the right to criminal jury trials in these cases.

In this case, however, as in prior cases, we deny the petitions for writ of mandamus without prejudice, because we are confident that the respondent will comply with the substance of this opinion. *See Poteat v. King,* 487 A.2d 215, 217 (D.C.1984) ("We refrain from issuing the writ of mandamus because we are confident that respondent, after reading this opinion, will afford petitioner the relief he requests."); *Anderson v. Sorrell,* 481 A.2d 766, 771 (D.C.1984) ("Although we do find abuse of judicial power, we do not deem it necessary to issue a writ of mandamus. Rather, this court will send copies of this opinion to the hearing judges so that they may reevaluate their orders."); *Bowman v. United States,* 412 A.2d 10, 12–13 (D.C.1980) (per curiam) ("Since we have reason to believe that the trial judge will vacate the challenged order without the pressure of a writ of mandamus, we refrain from issuing such process.")

Furthermore, consistent with this ruling, we lift all stays we have previously entered in these four proceedings.

*So ordered.*

SCHWELB, Associate Judge, concurring:

Counsel for Judge Bayly has made a thoughtful presentation on behalf of the judge's interpretation of the statute. His contentions are not implausible, and it is not obvious to me that the petitioners' right to a jury trial is so "clear and indisputable" that mandamus would be an appropriate remedy. In my view, this case approaches the outer limits of our authority to issue writs of mandamus.

Nevertheless, given the legislature's use of "six months" and "180 days" in the same statute, I agree, albeit not without some hesitation, that the requisite clarity and indisputability have been shown. I note that although Judge Bayly's counsel correctly described mandamus as an "extraordinary" remedy, he did not include in his submission the argument that petitioners' right to jury trial must be "clear and indisputable," con-

tenting himself with the contention that Judge Bayly's rulings were correct.