## UNITED STATES *v.* DUELL.

ERROR TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 444. Argued December 1, 2, 1898. — Decided January 23, 1899.

An appeal to the Court of Appeals of the District of Columbia from the decision of the Commissioner of Patents in an interference controversy presents all the features of a civil case, a plaintiff, a defendant and a judge, and deals with a question judicial in its nature, in respect of which the judgment of the court is final, so far as the particular action of the Patent Office is concerned; and such judgment is none the less a judgment because its effect may be to aid an administrative or executive body in the performance of duties legally imposed upon it by Congress in execution of a power granted by the Constitution.

In deciding whether a patent shall issue or not, the Commissioner of Patents acts on evidence, finds the facts, applies the law and decides questions

affecting not only public, but private interests; and likewise as to re-issues, or extension, or on interference between contesting claimants; in all of which he exercises judicial functions.

*Butterworth* v. *Hoe*, 112 U. S. 50, held to be directly in point, and the language on page 59 held to be also in point in which the court, speaking of that clause in Article 1, Section 8 of the Constitution, which confers upon Congress the power " to promote the progress of science and useful arts, by securing for limited times to authors and inventors, the exclusive right to their respective writings and discoveries," says : " The legislation based on this provision regards the right of property in the inventor as the medium of the public advantage derived from his invention; so that in every grant of the limited monopoly two interests are involved — that of the public, who are the grantors, and that of the patentee.  There are thus two parties to every application for a patent, and more when, as in case of interfering claims or patents, other private interests compete for preference.  The questions of fact arising in this field find their answers in every department of physical science, in every branch of mechanical art; the questions of law necessary to be applied in the settlement of this class of public and private rights have founded a special branch of technical jurisprudence.  The investigation of every claim presented involves the adjudication of disputed questions of fact upon scientific or legal principles, and is, therefore, essentially judicial in its character, and requires the intelligent judgment of a trained body of skilled officials, expert in the various branches of science and art, learned in the history of invention and proceeding by fixed rules to systematic conclusions."

In an interference proceeding in the Patent Office between Bernardin and Northall, the Commissioner, Seymour, decided in favor of Bernardin, whereupon Northall prosecuted an appeal to the Court of Appeals of the District of Columbia. That court awarded Northall priority and reversed the Commissioner's decision.  7 App. D. C. 452.  Bernardin, notwithstanding, applied to the Commissioner to issue the patent to him and tendered the final fee, but the Commissioner refused to do this in view of the decision of the Court of Appeals, which had been duly certified to him.  Bernardin then applied to the Supreme Court of the District of Columbia for a mandamus to compel the Commissioner to issue the patent in accordance with his prior decision on the ground that the statute providing for an appeal was unconstitutional and the judgment of the Court of Appeals void for want of jurisdiction.  The application was denied, and Bernardin appealed to

the Court of Appeals, which affirmed the judgment. 10 App. D. C. 294.

Seymour resigned as Commissioner and was succeeded by Butterworth, and Bernardin recommenced his proceeding, which again went to judgment in the Supreme Court, and the Court of Appeals. 11 App. D. C. 91. The case was brought to this court, but abated in consequence of the death of Butterworth. *United States* v. *Butterworth*, 169 U. S. 600. Bernardin thereupon brought his action against Duell, Butterworth's successor, and judgment against him was again rendered in the District Supreme Court, that judgment affirmed by the Court of Appeals, and the cause brought here on writ of error.

The following sections of the Revised Statutes were referred to on the argument:

"SEC. 4906. The clerk of any court of the United States, for any District or Territory wherein testimony is to be taken for use in any contested case pending in the Patent Office, shall, upon the application of any party thereto, or of his agent or attorney, issue a subpœna for any witness residing or being within such District or Territory, commanding him to appear and testify before any officer in such District or Territory authorized to take depositions and affidavits, at any time and place in the subpœna stated. But no witness shall be required to attend at any place more than forty miles from the place where the subpœna is served upon him.

"SEC. 4907. Every witness duly subpœnaed and in attendance shall be allowed the same fees as are allowed to witnesses attending the courts of the United States.

"SEC. 4908. Whenever any witness, after being duly served with such subpœna, neglects or refuses to appear, or after appearing refuses to testify, the judge of the court whose clerk issued the subpœna may, on proof of such neglect or refusal, enforce obedience to the process or punish the disobedience, as in other like cases. But no witness shall be deemed guilty of contempt for disobeying such subpœna, unless his fees and travelling expenses in going to, returning from and one day's attendance at the place of examination,

are paid or tendered him at the time of the service of the subpœna; nor for refusing to disclose any secret invention or discovery made or owned by himself.

" Sec. 4909. Every applicant for a patent or for the reissue of a patent, any of the claims of which have been twice rejected, and every party to an interference, may appeal from the decision of the primary examiner, or of the examiner in charge of interferences in such case, to the board of examiners in chief; having once paid the fee for such appeal.

" Sec. 4910. If such party is dissatisfied with the decision of the examiners in chief, he may, on payment of the fee prescribed, appeal to the Commissioner in person.

" Sec. 4911. If such party, except a party to an interference, is dissatisfied with the decision of the Commissioner, he may appeal to the Supreme Court of the District of Columbia, sitting in banc.

" Sec. 4912. When an appeal is taken to the Supreme Court of the District of Columbia, the appellant shall give notice thereof to the Commissioner, and file in the Patent Office, within such time as the Commissioner shall appoint, his reasons of appeal, specifically set forth in writing.

" Sec. 4913. The court shall, before hearing such appeal, give notice to the Commissioner of the time and place of the hearing, and on receiving such notice the Commissioner shall give notice of such time and place in such manner as the court may prescribe, to all parties who appear to be interested therein. The party appealing shall lay before the court certified copies of all the original papers and evidence in the case, and the Commissioner shall furnish the court with the grounds of his decision, fully set forth in writing, touching all the points involved by the reasons of appeal. And at the request of any party interested, or of the court, the Commissioner and the examiners may be examined under oath, in explanation of the principles of the thing for which a patent is demanded.

" Sec. 4914. The court, on petition, shall hear and determine such appeal, and revise the decision appealed from in a summary way, on the evidence produced before the Commissioner, at such early and convenient time as the court may

appoint; and the revision shall be confined to the points set forth in the reasons of appeal. After hearing the case the court shall return to the Commissioner a certificate of its proceedings and decision, which shall be entered of record in the Patent Office, and shall govern the further proceedings in the case. But no opinion or decision of the court in any such case shall preclude any person interested from the right to contest the validity of such patent in any court wherein the same may be called in question.

"SEC. 4915. Whenever a patent on application is refused, either by the Commissioner of Patents or by the Supreme Court of the District of Columbia upon appeal from the Commissioner, the applicant may have remedy by bill in equity; and the court having cognizance thereof, on notice to adverse parties and other due proceedings had, may adjudge that such applicant is entitled, according to law, to receive a patent for his invention, as specified in his claim, or for any part thereof, as the facts in the case may appear. And such adjudication, if it be in favor of the right of the applicant, shall authorize the Commissioner to issue such patent on the applicant filing in the Patent Office a copy of the adjudication, and otherwise complying with the requirements of law. In all cases, where there is no opposing party, a copy of the bill shall be served on the Commissioner; and all the expenses of the proceeding shall be paid by the applicant, whether the final decision is in his favor or not."

Section 780 of the Revised Statutes of the District of Columbia reads thus:

"SEC. 780. The Supreme Court, sitting in banc, shall have jurisdiction of and shall hear and determine all appeals from the decisions of the Commissioner of Patents, in accordance with the provisions of sections forty-nine hundred and eleven to section forty-nine hundred and fifteen, inclusive, of chapter one, Title LX, of the Revised Statutes, 'Patents, Trade-marks, and Copyrights.'"

Section nine of the "act to establish a Court of Appeals for the District of Columbia, and for other purposes," approved February 9, 1893, c. 74, 27 Stat. 434, 436, is —

"SEC. 9. That the determination of appeals from the decision of the Commissioner of Patents, now vested in the general term of the Supreme Court of the District of Columbia, in pursuance of the provisions of section seven hundred and eighty of the Revised Statutes of the United States, relating to the District of Columbia, shall hereafter be and the same is hereby vested in the Court of Appeals created by this act; and in addition, any party aggrieved by a decision of the Commissioner of Patents in any interference case may appeal therefrom to said Court of Appeals."

*Mr. Julian C. Dowell* and *Mr. George C. Hazelton* for plaintiffs in error.

*Mr. Solicitor General* for defendant in error. *Mr. Jeremiah M. Wilson,* on behalf of Northall's assignee, filed a brief for same.

MR. CHIEF JUSTICE FULLER, after stating the case, delivered the opinion of the court.

The Court of Appeals for the District of Columbia adjudged that Northall was entitled to the patent. By section 8 of the act establishing that court, 27 Stat. 434, c. 74, it is provided that any final judgment or decree thereof may be revised by this court on appeal or error in cases wherein the validity of a statute of the United States is drawn in question. The validity of the act of Congress allowing an appeal to the Court of Appeals in interference cases was necessarily determined when that court went to judgment, yet no attempt was made to bring the case directly to this court, but the relator applied to the District Supreme Court to compel the Commissioner to issue the patent in disregard of the judgment of the Court of Appeals to the contrary, and, the application having been denied, the Court of Appeals was called on to readjudicate the question of its own jurisdiction.

The ground of this unusual proceeding, by which the lower court was requested to compel action to be taken in defiance

of the court above, and the latter court was called on to rejudge its own judgment, was that the decree of the Court of Appeals was utterly void because of the unconstitutionality of the statute by which it was empowered to exercise jurisdiction.

Nothing is better settled than that the writ of mandamus will not ordinarily be granted if there is another legal remedy, nor unless the duty sought to be enforced is clear and indisputable; and we think that, under the circumstances, the remedy by appeal existed; and that it is not to be conceded that it was the duty of the Commissioner to disobey the decree because in his judgment the statute authorizing it was unconstitutional, or that it would have been consistent with the orderly and decorous administration of justice for the District Supreme Court to hold that the Court of Appeals was absolutely destitute of the jurisdiction which it had determined it possessed. Even if we were of opinion that the act of Congress was not in harmony with the Constitution, every presumption was in favor of its validity, and we cannot assent to the proposition that it would have been competent for the Commissioner to treat the original decree as absolutely void, and without force and effect as to all persons and for all purposes.

But as, in our opinion, the Court of Appeals had jurisdiction, we prefer to affirm the judgment on that ground.

The contention is that Congress had no power to authorize the Court of Appeals to review the action of the Commissioner in an interference case, on the theory that the Commissioner is an executive officer; that his action in determining which of two claimants is entitled to a patent is purely executive; and that, therefore, such action cannot be subjected to the revision of a judicial tribunal.

Doubtless, as was said in *Murray* v. *Hoboken Land & Improvement Co.*, 18 How. 272, 284, Congress cannot bring under the judicial power a matter which, from its nature, is not a subject for judicial determination, but at the same time, as Mr. Justice Curtis, delivering the opinion of the court, further observed, " there are matters involving public

rights, which may be presented in such form that the judicial power is capable of acting on them, and which are susceptible of judicial determination,· but which Congress may or may not bring within the cognizance of the courts of the United States, as it may deem proper." The instances in which this has been done are numerous, and many of them are referred to in *Fong Yue Ting* v. *United States,* 149 U. S. 698, 714,715, 728.

Since, under the Constitution, Congress has power "to promote the progress of science and useful arts, by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries," and to make all laws which shall be necessary and proper for carrying that expressed power into execution, it follows that Congress may provide such instrumentalities in respect of securing to inventors the exclusive right to their discoveries as in its judgment will be best calculated to effect that object.

And by reference to the legislation on the subject, a comprehensive sketch of which was given by Mr. Justice Matthews in *Butterworth* v. *Hoe,* 112 U. S. 50, it will be seen that from 1790 Congress has selected such instrumentalities, varying them from time to time, and, since 1870, has asserted the power to avail itself of the courts of the District of Columbia in that connection.

The act of April 10, 1790, c. 7, 1 Stat. 109, authorized the issue of patents by the Secretary of State, the Secretary for the Department of War, and the Attorney General, or any two of them, "if they shall deem the invention or discovery sufficiently useful and important," and this was followed by the act of February 21, 1793, c. 11, 1 Stat. 318, authorizing them to be issued by the Secretary of State, upon the certificate of the Attorney General that they were conformable to the act. The ninth section of the statute provided for the case of interfering applications, which were to be submitted to the decision of three arbitrators, chosen one by each of the parties and the third appointed by the Secretary of State, whose decision or award, or that of two of them, should be final as respected the granting of the patent.

Then came the act of July 4, 1836, c. 357, 5 Stat. 117, cre-

ating in the Department of State the Patent Office, "the chief officer of which shall be called the Commissioner of Patents," and "whose duty it shall. be, under the direction of the Secretary of State, to superintend, execute and perform, all such acts and things touching and respecting the granting and issuing of patents for new and useful discoveries, inventions and improvements, as are herein provided for, or shall hereafter be, by law, directed to be done and performed."
. . . By that act it was declared. to be the duty of the Commissioner to issue a patent if he "shall deem it to be sufficiently useful and important;" and, in case of his refusal, the applicant was (sec. 7) secured an appeal from his decision to a board of examiners, to be composed of three disinterested persons, appointed for that purpose by the Secretary of State, one of whom, at least, to be selected, if practicable and convenient, for his knowledge and skill in the particular art, manufacture or branch of science to which the alleged invention appertained. The decision of this board being certified to the Commissioner, it was declared that "he shall be governed thereby in the further proceedings to be had on such application." A like proceeding, by way of appeal, was provided in cases of interference. By section 16 of the act a remedy by bill in equity, still existing in sections 4915, 4918, Revised Statutes, was given as between interfering patents or whenever an application had been refused on an adverse decision of a board of examiners. By section 11 of the act of March 3, 1839, c. 88, 5 Stat. 353, 354, as modified by the act of August 30, 1852, c. 107, 10 Stat. 75, it was provided that in all cases where an appeal was thus allowed by law from the decision of the Commissioner of Patents to a board of examiners, the party, instead thereof, should have a right to appeal to the chief judge or to either of the assistant judges of the Circuit Court of the District of Columbia; and by section 10 the provisions of section 16 of the act of 1836 were extended to all cases where patents were refused for any reason whatever, either by the Commissioner or by the chief justice of the District of Columbia upon appeals from the decision of the Commissioner, as well as where the

same shall have been refused on account of or by reason of interference with a previously existing patent.

By the act of March 3, 1849, c. 108, 9 Stat. 395, the Patent Office was transferred to the Department of the Interior. The act of March 2, 1861, c. 88, 12 Stat. 246, created the office of examiners in chief, " for the purpose of securing greater uniformity of action in the grant and refusal of letters patent," " to be composed of persons of competent legal knowledge and scientific ability, whose duty it shall be, on the written petition of the applicant for that purpose being filed, to revise and determine upon the validity of decisions made by examiners when adverse to the grant of letters patent; and also to revise and determine in like manner upon the validity of the decisions of examiners in interference cases, and when required by the Commissioner in applications for the extension of patents, and to perform such other duties as may be assigned to them by the Commissioner; that from their decisions appeals may be taken to the Commissioner of Patents in person, upon payment of the fee hereinafter prescribed ; that the said examiners in chief shall be governed in their action by the rules to be prescribed by the Commissioner of Patents."

The act of July 8, 1870, c. 230, 16 Stat. 198, revised, consolidated and amended the statutes then in force on the subject, and by section 48, an appeal to the Supreme Court of the District of Columbia sitting in banc was provided for, whose decision was to govern the further proceedings in the case (sec. 50) ; and the provisions of the act material to the present inquiry were carried in substance into the existing revision.

By the act of February 9, 1893, c. 74, 27 Stat. 434, the determination of appeals from the Commissioner of Patents, which was formerly vested in the General Term of the Supreme Court of the District, was vested in the Court of Appeals, and, in addition, it was provided that " any party aggrieved by a decision of the Commissioner of Patents in any interference case may appeal therefrom to said Court of Appeals."

As one of the instrumentalities designated by Congress in

execution of the power granted, the office of Commissioner of Patents was created, and though he is an executive officer, generally speaking, matters in the disposal of which he exercises functions judicial in their nature may properly be brought within the cognizance of the courts.

Now, in deciding whether a patent shall issue or not, the Commissioner acts on evidence, finds the facts, applies the law and decides questions affecting not only public but private interests; and so as to reissue, or extension or on interference between contesting claimants; and in all this he exercises judicial functions.

In *Butterworth* v. *Hoe, supra,* Mr. Justice Matthews, referring to the constitutional provision, well said :

" The legislation based on this provision regards the right of property in the inventor as the medium of the public advantage derived from his invention; so that in every grant of the limited monopoly two interests are involved, that of the public, who are the grantors, and that of the patentee.  There are thus two parties to every application for a patent, and more, when, as in case of interfering claims or patents, other private interests compete for preference.  The questions of fact arising in this field find their answers in every department of physical science, in every branch of mechanical art; the questions of law, necessary to be applied in the settlement of this class of public and private rights, have founded a special branch of technical jurisprudence.  The investigation of every claim presented involves the adjudication of disputed questions of fact, upon scientific or legal principles, and is, therefore, essentially judicial in its character, and requires the intelligent judgment of a trained body of skilled officials, expert in the various branches of science and art, learned in the history of invention, and proceeding by fixed rules to systematic conclusions."

That case is directly in point and the *ratio decidendi* strictly applicable to that before us.  The case was a suit in mandamus brought by the claimant of a patent in whose favor the Commissioner had found in an interference case, to compel the Commissioner to issue the patent to him.  The Commissioner

had refused to do this on the ground that the defeated party had appealed to the Secretary of the Interior, who had reversed the Commissioner's action, and found in appellant's favor. This court held that while the Commissioner of Patents was an executive officer and subject in administrative or executive matters to the supervision of the head of the department, yet that his action in deciding patent cases was essentially judicial in its nature and not subject to review by the executive head, an appeal to the courts having been provided for. And among other things it was further said:

"It is evident that the appeal thus given to the Supreme Court of the District of Columbia from the decision of the Commissioner, is not the exercise of ordinary jurisdiction at law or in equity on the part of that court, but is one in the statutory proceeding under the patent laws whereby that tribunal is interposed in aid of the Patent Office, though not subject to it. Its adjudication, though not binding upon any who choose by litigation in courts of general jurisdiction to question the validity of any patent thus awarded, is, nevertheless, conclusive upon the Patent Office itself, for, as the statute declares, Rev. Stat. § 4914, it 'shall govern the further proceedings in the case.' The Commissioner cannot question it. He is bound to record and obey it. His failure or refusal to execute it by appropriate action would undoubtedly be corrected and supplied by suitable judicial process. The decree of the court is the final adjudication upon the question of right; everything after that dependent upon it is merely in execution of it; it is no longer matter of discretion, but has become imperative and enforceable. It binds the whole Department, the Secretary as well as the Commissioner, for it has settled the question of title, so that a demand for the signatures necessary to authenticate the formal instrument and evidence of grant may be enforced. It binds the Secretary by acting directly upon the Commissioner, for it makes the action of the latter final by requiring it to conform to the decree.

"Congress has thus provided four tribunals for hearing applications for patents, with three successive appeals, in which the Secretary of the Interior is not included, giving jurisdiction

in appeals from the Commissioner to a judicial body, independent of the Department, as though he were the highest authority on the subject within it.    And to say that under the name of direction and superintendence, the Secretary may annul the decision of the Supreme Court of the District, sitting on appeal from the Commissioner, by directing the latter to disregard it, is to construe a statute so as to make one part repeal another, when it is evident both were intended to coexist without conflict."

&ast;          &ast;          &ast;          &ast;          &ast;

"No reason can be assigned for allowing an appeal from the Commissioner to the Secretary in cases in which he is by law required to exercise his judgment on disputed questions of law and fact, and in which no appeal is allowed to the courts that would not equally extend it to those in which such appeals are provided, for all are equally embraced in the general authority of direction and superintendence.    That includes all or does not extend to any.   The true conclusion, therefore, is, that in matters of this description, in which the action of the Commissioner is quasi-judicial, the fact that no appeal is expressly given to the Secretary is conclusive that none is to be implied."

We perceive no ground for overruling that case or dissenting from the reasoning of the opinion; and as the proceeding in the Court of Appeals on an appeal in an interference controversy presents all the features of a civil case, a plaintiff, a defendant and a judge, and deals with a question judicial in its nature, in respect of which the judgment of the court is final so far as the particular action of the Patent Office is concerned, such judgment is none the less a judgment "because its effect may be to aid an administrative or executive body in the performance of duties legally imposed upon it by Congress in execution of a power granted by the Constitution." *Interstate Commerce Commission* v. *Brimson*, 154 U. S. 447.

It will have been seen that in the gradual development of the policy of Congress in dealing with the subject of patents, the recognition of the judicial character of the questions involved became more and more pronounced.

By the acts of 1839 and 1852 an appeal was given, not to the Circuit Court of the District of Columbia, but to the chief judge or one of the assistant judges thereof, who was thus called on to act as a special judicial tribunal. The competency of Congress to make use of such an instrumentality or to create such a tribunal in the attainment of the ends of the Patent Office seems never to have been questioned, and we think could not have been successfully. The nature of the thing to be done being judicial, Congress had power to provide for judicial interference through a special tribunal, *United States* v. *Coe,* 155 U. S. 76; and *a fortiori* existing courts of competent jurisdiction might be availed of.

We agree that it is of vital importance that the line of demarcation be+ween the three great departments of government should be observed, and that each should be limited to the exercise of its appropriate powers, but in the matter of this appeal we find no such encroachment of one department on the domain of another as to justify us in holding the act in question unconstitutional.

*Judgment affirmed.*