PAS

v.

**TRAVELERS INSURANCE COMPANY, Petitioner**

and

**J.T. Baker, Inc. and Richardson–Vicks, Inc.**

**Honorable John C. Lifland, United States District Judge for the District of New Jersey, Nominal Respondent.**

PAS

v.

**TRAVELERS INSURANCE COMPANY; J.T. Baker, Inc. and Richardson–Vicks, Inc.**

Travelers Insurance Company, Appellant.

Nos. 92–5510, 92–5512.

United States Court of Appeals, Third Circuit.

Argued May 19, 1993.

Decided Oct. 14, 1993.

Zulima V. Farber, Public Advocate and William F. Culleton, Jr. (argued), New Jersey Dept. of the Public Advocate, Camden, NJ, for PAS, respondent/appellee.

Susan K. Hoffman (argued), Andrew R. Rogoff and Andrew E. Kantra, Pepper, Hamilton & Scheetz, Philadelphia, PA, and Francis X. Ryan, Green, Lundgren & Ryan, Haddonfield, NJ, for Travelers Ins. Co., petitioner/appellant.

John H. Widman (argued), McAleese, McGoldrick & Susanin, King of Prussia, PA, for J.T. Baker, Inc. and Richardson–Vicks, Inc.

Before: STAPLETON, ALITO and SEITZ, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Circuit Judge.

## I. BACKGROUND

The historical facts in this case are undisputed. Plaintiff, a woman who uses the pseudonym "PAS," was hired by J.T. Baker, Inc., a subsidiary of Richardson–Vicks, Inc. (collectively "Baker") in 1987. Approximately six months after she was hired, plaintiff became disabled with bipolar disorder,[1] a disability which is apparently continuing. Plaintiff initially received disability benefits from a health insurance plan paid for by Baker and supplied through the Travelers Insurance Company ("Travelers"). Subsequently, Travelers terminated plaintiff's benefits under a policy provision that generally limits coverage for mental illnesses to two years.

Plaintiff brought a four-count action in the Superior Court of New Jersey seeking, *inter alia*, to have the policy provision under which her benefits were terminated declared void as contrary to New Jersey law and to have Travelers ordered to restore her coverage. Travelers and Baker removed the action to federal district court because it contained claims that they were undisputedly entitled to have resolved in a federal forum under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1461.

Plaintiff concedes that Travelers and Baker are entitled to a federal forum for resolution of three of her four claims. However, plaintiff moved for a remand to state court of her claim that the termination of her insurance coverage violated two New Jersey statutes. *See* N.J.Stat.Ann. § 17:29B–4(7)(b) (West 1985); N.J.Stat.Ann. § 17B:30–12(d) (West 1985). Baker and Travelers opposed

plaintiff's request for remand, arguing that remand was unwarranted because the two New Jersey statutes were preempted by ERISA.

In addressing plaintiff's motion for remand, the district court first concluded that the New Jersey statutes were not preempted by ERISA. Next, the court reasoned that, because it had only supplemental jurisdiction over the state law claim, it was free to exercise its discretion under 28 U.S.C. § 1367(c)(1) when deciding whether to remand that claim to state court. It thereupon concluded that, because the claim involved a "novel and complex issue of state law," it should be remanded to the Superior Court of New Jersey. (J.A. at 113).

Subsequently, the district court concluded that the state court action "[might] become dispositive of the [federal] litigation...." (J.A. at 127). Accordingly, it ordered that the federal action be administratively terminated "without prejudice to the right of the parties to reopen the proceedings at any time, for good cause shown...." (J.A. at 127).

Travelers filed a motion for reconsideration of the district court's order of remand. The district court denied that motion and Travelers thereupon filed both a notice of appeal and petition for a writ of mandamus.[2] This court ordered that Travelers' appeal and petition for mandamus be consolidated for disposition.

## II. JURISDICTION

### A. Bar of 28 U.S.C. § 1447(d)

█ We must first consider whether we have jurisdiction to entertain the appeal or the petition seeking a writ of mandamus directing the district court to vacate its re-

---

1. "The essential feature of Bipolar Disorder is one or more Manic Episodes, usually accompanied by one or more Major Depressive Episodes." American Psychiatric Association, *Diagnostic & Statistical Manual of Mental Disorders* 225 (3d ed. rev.) (citations omitted).

2. Baker had earlier filed a petition for a writ of mandamus directing the district court to vacate its remand order. Another panel of this court denied Baker's petition without opinion. No party argues that the denial of Baker's petition

by a different panel of this court has any preclusive effect here.

Although Baker is neither a petitioner nor an appellant, it nevertheless filed a brief and argued in these cases. In its brief and at oral argument, Baker asked this court to reconsider the earlier denial of its petition for mandamus. However, a different panel of this court denied Baker's petition for mandamus in an entirely separate proceeding. Accordingly, we do not think it is an appropriate subject for consideration here.

mand order. The remanded claim is based on state law. The first jurisdictional issue is created by 28 U.S.C. § 1447(d), which provides:

> (d) An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, except that an order remanding a case to the State court from which it was removed pursuant to section 1443 of this title shall be reviewable by appeal or otherwise. [Section 1443 is not involved.]

In *Thermtron Prod., Inc. v. Hermansdorfer*, 423 U.S. 336, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976), the Supreme Court interpreted the limitations in subsection 1447(d) to be restricted to cases remanded under § 1447(c). Cases may be remanded under § 1447(c) for (1) lack of district court subject matter jurisdiction or (2) a defect in the removal procedure. Clearly, the remand order here was not based on either such ground. Rather, the district court, in the exercise of its admitted discretion, remanded the claim under its supplemental jurisdiction found in 28 U.S.C. § 1367(c)(1): the claim raised a novel or complex issue of state law. Thus, the statutory bar to appellate review does not apply here. *See Aliota v. Graham*, 984 F.2d 1350, 1354–55 (3d Cir.1993); 1A Moore's Federal Practice ¶ 0.169[2.–1]. The Eleventh Circuit has similarly concluded that remand orders premised on the district court's discretion under § 1367(c) are reviewable under the *Thermtron* logic. *In re Surinam Airways Holding Co.*, 974 F.2d 1255, 1257 (11th Cir.1992).

### B. Review by Direct Appeal or Mandamus

Travelers filed an appeal from the district court's order remanding plaintiff's claim to state court and a petition for a writ of mandamus. "A court of appeals may not 'engage in extraordinary review by mandamus "in aid of [its] jurisdiction" when it can exercise the same review by a contemporaneous ordinary appeal.'" *United States v. Santtini*, 963 F.2d 585, 590 (3d Cir.1992) (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 8 n. 6, 103 S.Ct. 927, 933 n. 6, 74 L.Ed.2d 765 (1983) (quoting 28 U.S.C. § 1651)). "Therefore, we must first determine whether an appeal is available to [Travelers] at this time and if not, whether a writ ... may issue on these facts." *Id.*

■ All parties (plaintiff, Baker and Travelers) agree that we have jurisdiction over Travelers' appeal. Nevertheless, we have a "special obligation" to decide the jurisdictional question for ourselves "even though the parties are prepared to concede it." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986); *see Lewis v. International Bhd. of Teamsters, Local Union No. 771*, 826 F.2d 1310, 1312 (3d Cir.1987). We turn to that jurisdictional analysis.

Early Supreme Court precedent provided that mandamus was the only avenue for review of a federal court order remanding a claim to a state court. *See Railroad Co. v. Wiswall*, 90 U.S. (23 Wall.) 507, 508, 23 L.Ed. 103 (1875). In *Wiswall*, the Court stated: "The order of the Circuit Court remanding the cause to the State court is not a 'final judgment' in the action, but a refusal to hear and decide. The remedy in such a case is by mandamus to compel action, and not by a writ of error to review what has been done." *Id.*

Travelers concedes that the district court's remand order is not a final order in the traditional sense. However, Travelers argues that the order is appealable under the collateral order doctrine which developed after *Wiswall*. *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949) (establishing collateral order doctrine).[3] Nevertheless, years after the collateral order doctrine was first established, the Supreme Court cited *Wiswall* for the proposition that "an order remanding a

---

3.   Under this exception to the finality rule of [28 U.S.C.] § 1291, an interlocutory order may be appealed if it falls within "that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated."
*In re Pruitt*, 910 F.2d 1160, 1166 (3d Cir.1990) (quoting *Cohen*, 337 U.S. at 546, 69 S.Ct. at 1225–26).

removed action does not represent a final judgment reviewable by appeal." *Thermtron Prods., Inc. v. Hermansdorfer,* 423 U.S. 336, 352–53, 96 S.Ct. 584, 594, 46 L.Ed.2d 542 (1976). Thus, *Thermtron* indicates that the development of the collateral order doctrine did not nullify *Wiswall's* holding that review in such cases should be accomplished by mandamus.

[redacted] We are aware that other courts of appeals have held that review in a case such as this should proceed by direct appeal rather than by mandamus. *See, e.g., McDermott Int'l, Inc. v. Lloyds Underwriters,* 944 F.2d 1199, 1203 n. 5 (5th Cir.1991). Nevertheless, we agree with those courts that have held that, when a district court exercises its discretion to remand claims to a state court, review is available, if at all, only through a mandamus proceeding. *See, e.g., Westinghouse Credit Corp. v. Thompson,* 987 F.2d 682, 684 (10th Cir.1993) ("Review of the remand of the pendent claims ... must be by mandamus."); *In re Surinam Airways Holding Co.,* 974 F.2d 1255, 1257 (11th Cir.1992) ("[A]n order expressly remanding pursuant to § 1367(c) is reviewable. As in *Thermtron,* the appropriate basis for reviewing such an order is on petition for writ of mandamus." (citation omitted)); *Corcoran v. Ardra Ins. Co.,* 842 F.2d 31, 35 (2d Cir.1988) ("*Thermtron's* explicit ruling that review must be by mandamus rather than appeal has recently been reinforced [by the Supreme Court].").

We conclude that the proper method for review is by petition for writ of mandamus. Accordingly, we shall dismiss Travelers' appeal. We next consider whether Travelers has satisfied the requirements for the issuance of the writ.

## III. AVAILABILITY OF MANDAMUS

### A. Requirements for Mandamus

Mandamus is authorized by the All Writs Act, 28 U.S.C. § 1651(a), which provides:

> The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

[redacted] Use of the writ is limited to extraordinary cases because of "the undesirability of making a district court judge a litigant, and the inefficiency of piecemeal appellate litigation." *Mallard v. United States District Court,* 490 U.S. 296, 309, 109 S.Ct. 1814, 1822, 104 L.Ed.2d 318 (1989). "The traditional use of the writ ... has been to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Roche v. Evaporated Milk Ass'n,* 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943). Thus, a writ is not available unless the district court has committed a " 'clear abuse of discretion' " or engaged in "conduct amounting to 'usurpation of [the judicial] power.' " *Mallard,* 490 U.S. at 309, 109 S.Ct. at 1822 (quoting respectively *Bankers Life & Casualty Co. v. Holland,* 346 U.S. 379, 383, 74 S.Ct. 145, 148, 98 L.Ed. 106 (1953) and *DeBeers Consolidated Mines, Ltd. v. United States,* 325 U.S. 212, 217, 65 S.Ct. 1130, 1133, 89 L.Ed. 1566 (1945)).

[redacted] The Supreme Court imposes two other requirements before the writ may issue. First, "petitioners must show that they lack adequate alternative means to obtain the relief they seek." *Mallard,* 490 U.S. at 309, 109 S.Ct. at 1822. Second, petitioners must "carry 'the burden of showing that [their] right to issuance of the writ is "clear and indisputable." ' " *Id.* (quoting *Bankers Life,* 346 U.S. at 384, 74 S.Ct. at 148 (quoting *United States v. Duell,* 172 U.S. 576, 582, 19 S.Ct. 286, 287, 43 L.Ed. 559 (1899))). We must determine whether these requirement are satisfied here.[4]

Travelers contends that it has a clear and indisputable right to the issuance of the writ because the district court erroneously concluded that the New Jersey statutes were not preempted by ERISA. To address this

4. The parties do not attach any significance to the fact that Travelers did not request the district court to grant an interlocutory appeal of the issues under 28 U.S.C. § 1292(b) before petitioning for mandamus. Nor do we under the present circumstances. *Cf. In re School Asbestos Litig.,* 977 F.2d 764, 774 (3d Cir.1992).

contention, we turn to an examination of the merits of the ERISA preemption issue.

## B. ERISA Preemption

At the outset, we note that "[t]he question whether a certain state action is preempted by federal law is one of congressional intent. The purpose of Congress is the ultimate touchstone." *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 45, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987). This fundamental principle of preemption jurisprudence controls our analysis.

■ In general, ERISA "supersede[s] any and all State laws" that "relate to" ERISA-covered benefit plans. 29 U.S.C. § 1144(a). It is undisputed that the plan which provided plaintiff's benefits is an ERISA-covered benefit plan and it is similarly undisputed that the New Jersey statutes in question relate to that plan. However, plaintiff contends that these statutes fall within a statutorily-carved exception to ERISA's broad preemption language.

In what legal practitioners refer to as ERISA's "saving clause," ERISA saves from federal preemption "any law of any State which regulates insurance." 29 U.S.C. § 1144(b)(2)(A). To determine whether the New Jersey statutes relied upon by plaintiff "regulate insurance" within the meaning of ERISA's saving clause, we will apply the framework established in two decisions of the Supreme Court. *See Pilot,* 481 U.S. 41, 107 S.Ct. 1549; *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985).

■ In determining whether a state law regulates insurance, we employ a two-part analysis.

First, we [take] what guidance [is] available from a "common-sense view" of the language of the saving clause itself. Sec-

ond, we [make] use of the case law interpreting the phrase "business of insurance" under the McCarran–Ferguson Act, 15 U.S.C. § 1011 *et seq.,* in interpreting the saving clause.

*Pilot,* 481 U.S. at 48, 107 S.Ct. at 1553 (citing *Metropolitan Life* ). We turn to an application of this analytical framework to the facts of this case.

### 1. Common Sense Understanding of "Regulates Insurance"

■ Our first task is to determine whether "a common-sense understanding of the phrase 'regulates insurance' .... support[s] the argument that the [New Jersey statutes] ... fall[ ] under the saving clause." *Pilot,* 481 U.S. at 50, 107 S.Ct. at 1554. To make this determination we must consider the language of the state statutes.

The New Jersey statute primarily relied upon by plaintiff provides:

> No person shall make or permit any unfair discrimination between individuals of the same class and of essentially the same hazard in the amount of premium, policy fees, or rates charged for any policy or contract of health insurance or in the benefits payable thereunder, or any of the terms or conditions of such policy or contract, or in any other manner whatever.

N.J.Stat.Ann. § 17B:30–12(d) (West 1985).[5]

In *Pilot,* the Supreme Court suggested that, under a common sense approach, a law regulates insurance if it "ha[s] an impact on the insurance industry [and is] specifically directed toward that industry." 481 U.S. at 50. By its very terms, Section 17B:30–12(d) is specifically aimed at the insurance industry. In addition, it necessarily has an impact on that industry. Thus, a common sense interpretation of the phrase "regulates insurance" tends to support the conclusion that

---

5. Our preemption analysis focuses on Section 17B:30–12(d) though both statutes relied upon by plaintiff contain essentially the same language. *See* N.J.Stat.Ann. § 17:29B–4(7)(b) (West 1985). Section 17:29B–4(7)(b) prohibits any person from

> [m]aking or permitting any unfair discrimination between individuals of the same class and of essentially the same hazard in the amount of

premium, policy fees, or rates charged for any policy or contract of accident or health insurance or in the benefits payable thereunder, or in any of the terms or conditions of such contract, or in any other manner whatever.

No party argues that we would reach a different conclusion as to preemption if we focused on Section 17:29B–4(7)(b).

Section 17B:30–12(d) falls under the saving clause. We turn to the second part of the framework, an analysis of federal caselaw applying the McCarran–Ferguson Act.

## 2. Caselaw Under the McCarran–Ferguson Act

Our second task is to determine whether Section 17B:30–12(d) regulates the "business of insurance" as that phrase has been interpreted in caselaw applying the McCarran–Ferguson Act, 15 U.S.C. §§ 1011–1015. The Supreme Court has explained that "[t]hree criteria [are] used to determine whether a practice falls under the 'business of insurance' for purposes of the McCarran–Ferguson Act." *Pilot,* 481 U.S. at 48–49, 107 S.Ct. at 1553.

> [F]irst, whether the practice has the effect of transferring or spreading a policyholder's risk; *second,* whether the practice is an integral part of the policy relationship between the insurer and the insured; and *third,* whether the practice is limited to entities within the insurance industry.

*Hartford Fire Ins. Co. v. California,* —— U.S. ——, ——, 113 S.Ct. 2891, 2901, 125 L.Ed.2d 612 (U.S. June 28, 1993) (quoting *Union Labor Life Ins. Co. v. Pireno,* 458 U.S. 119, 129, 102 S.Ct. 3002, 3009, 73 L.Ed.2d 647 (1982)).

Travelers does not dispute that Section 17B:30–12(d) satisfies the first criterion by spreading the risk of health care coverage among the general population (including those who have handicaps). *Cf. Metropolitan Life,* 471 U.S. at 743, 105 S.Ct. at 2391 ("[The state statute] obviously regulates the spreading of risk: as we have indicated, it was intended to effectuate the legislative judgment that the risk of mental-health care should be shared."). We turn to the second criterion—whether the statute regulates an integral part of the policy relationship between the insurer and the insured.

In *Metropolitan Life,* a somewhat analogous case, the Supreme Court held that a law came within this second criterion because it "limit[ed] the type of insurance that an insurer may sell to the policyholder." 471 U.S. at 743, 105 S.Ct. at 2391. Similarly, in this case, Section 17B:30–12(d) prohibits the in-

clusion of discriminatory terms in insurance policies. Consequently, it would appear to satisfy this criterion. Travelers argues, however, that Section 17B:30–12(d) does not satisfy this criterion because, "[a]lthough [it] impose[s] a standard of conduct, [it] do[es] not regulate the *terms* of insurance policies." (Travelers' Br. at 20–21).

Travelers' argument ignores the express provision in the statute that prohibits discrimination in "the terms and conditions of [a] policy." N.J.Stat.Ann. § 17B:30–12(d). A law that prohibits certain policy provisions may be every bit as integral to the insurer-insured relationship as one that mandates the inclusion of certain terms. *Cf. Metropolitan Life,* 471 U.S. at 743, 105 S.Ct. at 2391 (concluding that statute which mandates inclusion of certain policy provisions is integral to the insurer-insured relationship). Thus, we conclude that Section 17B:30–12(d) satisfies the second *McCarran–Ferguson* criterion. We turn to an analysis of the third criterion.

Facially, Section 17B:30–12(d) appears to meet the third criterion that it be "limited to entities within the insurance industry." *Hartford,* —— U.S. at ——, 113 S.Ct. at 2901 (quoting *Union Labor Life Ins. Co. v. Pireno,* 458 U.S. 119, 129, 102 S.Ct. 3002, 3009, 73 L.Ed.2d 647 (1982)). Travelers argues, however, that Section 17B:30–12(d) is not technically limited to the insurance industry because it prohibits discrimination by any "person" and the term "person" is statutorily defined to include "any individual, insurer, company, association, organization, society, partnership, syndicate, trust, business trust, corporation [or] legal entity." In support of its position, Travelers notes that plaintiff has named non-insurers (i.e. Baker and Richardson–Vicks) as defendants. Thus, Travelers likens Section 17B:30–12(d) to a generic unfair trade practice statute which would have equal application to any industry. We find Travelers' argument unpersuasive.

We note that Section 17B:30–12(d) regulates only persons who provide "life insurance, health insurance and annuities." N.J.Stat.Ann. § 17B:30–1 (West 1985). We also point out that it speaks in terms that are

largely unique to the insurance industry (e.g. "premium," "policy fees," "rates," "benefits payable").[6] We conclude that the statute is distinguishable from any generic unfair trade practice statute and that it satisfies the third *McCarran–Ferguson* criterion.

We have concluded that the New Jersey statute satisfies each of the three *McCarran–Ferguson* criteria. Our conclusion is further supported by the reason given by the legislature for enacting the statute which contains Section 17B:30–12(d). The statute's declaration of purpose states: "The principal purpose [of the statute] is to regulate trade practices in the business of life insurance, health insurance and annuities in accordance with the intent of Congress as expressed in the [McCarran–Ferguson] Act...." N.J.Stat.Ann. § 17B:30–1 (West 1985).[7]

Both our common sense reading of the phrase "regulates insurance" and our application of the McCarran–Ferguson criteria support the conclusion that the New Jersey statute regulates insurance within the meaning of ERISA's saving clause. As such, the statute would appear to be saved from ERISA preemption. Notwithstanding this conclusion, Travelers argues that Section 17B:30–12(d) is preempted because it directly conflicts with ERISA. We now address that argument.

### 3. Conflict Preemption

▮ In several cases, the Supreme Court has stated that even if a statute is not expressly preempted by ERISA, it is nevertheless preempted if "it conflicts directly with an ERISA cause of action." *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 142–45, 111 S.Ct. 478, 484–86, 112 L.Ed.2d 474 (1990); see *Pilot*, 481 U.S. at 57, 107 S.Ct. at 1558 (distinguishing a case where the Court con-

cluded that a state statute was not preempted as "not involv[ing] a state law that conflicted with a substantive provision of ERISA"). Travelers argues that such "conflict preemption" exists in this case because "[plaintiff's] cause of action directly conflicts with the federal cause of action under ERISA § 502(a)(1)(B), which authorizes a participant in an employee benefit plan to bring a civil action 'to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.'" (Travelers' Br. at 15–16 (quoting 29 U.S.C. § 1132(a)(1)(B))). We conclude that Travelers misapprehends the requirements for conflict preemption.

In *McClendon*, the Supreme Court stated that conflict preemption occurs when a state statute "purports to provide a remedy for the violation of a right expressly guaranteed by [a section of ERISA] and exclusively enforced by § 502(a) [of ERISA]." 498 U.S. at 145, 111 S.Ct. at 486. Section 17B:30–12(d) purports to provide a proper plaintiff with a remedy for an insurance carrier's violation of an insured handicapped person's right not to be unfairly discriminated against in the terms and conditions of a health insurance policy. Travelers does not, and could not reasonably, contend that any provision of ERISA expressly guarantees this same right. Accordingly, we conclude that a necessary requirement for conflict preemption is missing here.

We recognize that cases from other courts of appeals may be read to support Travelers' position on conflict preemption. See, e.g., *Donatelli v. Home Ins. Co.*, 992 F.2d 763, 765 (8th Cir.1993) (affirming a district court's

---

**6.** Regulations issued under the authority of Section 17B:30–12(d) also focus exclusively on issues unique to the insurance industry (i.e., actuarial justification for rate setting). The regulations identify the following as acts of "unfair discrimination between individuals of the same class":

Refusing to insure, or refusing to continue to insure, or limiting the amount, extent or kind of coverage available to an individual, or charging an individual a different rate for the same coverage solely because of blindness,

partial blindness or other physical or mental impairments, except where the refusal, limitation or rate differential is based on sound, actuarial principles or is related to actual or reasonably anticipated experience.

N.J.Admin.Code tit. 11, § 11:4–20.2(a)(1) (1988).

**7.** Section 17:29B–4(7)(b), the other statutory section cited by plaintiff, was also enacted for this same purpose. See N.J.Stat.Ann. § 17:29B–1 (West 1985).

dismissal of a state law claim; "If 'saved' from ERISA preemption, the Missouri ... statute will govern the interpretation of [the] policy, but that does not affect the preemption of state law remedies by § 1132."); *Ruble v. UNUM Life Ins. Co.*, 913 F.2d 295, 297 (6th Cir.1990) (concluding that case was removable to federal court because, "[r]egardless of how Michigan's insurance code might have modified the terms of the ... insurance policy ... any action brought by a beneficiary to enforce the policy as so modified could only be brought under § 502 of ERISA...."). However, if we correctly read those cases as reaching a result contrary to the one we reach here, our preference is understandably for our own result.

■■■ We have concluded that the district court correctly determined that the New Jersey statute was not preempted by ERISA. Accordingly, the district court had supplemental, rather than original, jurisdiction over the state claim. Thus, the district court had discretion to remand the claim to state court. We reject Travelers' argument, unsupported by caselaw, that the district court was required to determine certain choice of law issues (e.g., which state's laws should be applied to interpret the insurance policy) before remanding the claim. Accordingly, we find no evidence that the district court abused its discretion in remanding the claim.[8]

## IV. CONCLUSION

We conclude that the proper method of review in this case is by petition for writ of mandamus. Accordingly, we will dismiss the appeal. We further conclude that Travelers has not established that its "right to issuance of the writ is 'clear and indisputable.'" *In re Pruitt*, 910 F.2d 1160, 1167 (3d Cir.1990) (quoting *Mallard v. United States District Court*, 490 U.S. 296, 309, 109 S.Ct. 1814,

---

8. We recognize that there might be some doubt as to whether a private plaintiff has standing to bring a cause of action in state court under the New Jersey statutes relied upon by plaintiff. *See, e.g., Pierzga v. Ohio Casualty Group of Ins. Cos.*, 208 N.J.Super. 40, 504 A.2d 1200, 1204 (App. Div.), *cert. denied*, 104 N.J. 399, 517 A.2d 402

1822, 104 L.Ed.2d 318 (1989)). Accordingly, the writ will be denied.

(1986); *see also Pickett v. Lloyds*, 131 N.J. 457, 621 A.2d 445, 451 (1993). However, after reviewing the pertinent caselaw and the parties' supplemental briefing on this issue, we believe that the standing issue is not sufficiently settled to support a conclusion that the district court abused its discretion in remanding the claim.